481 P.2d 407

**John Doyle BURTON, Petitioner-Appellant,**

v.

**STATE of New Mexico, Respondent-Appellee.**

**No. 9147.**

Supreme Court of New Mexico.

Feb. 22, 1971.

Fred T. Hensley, Portales, for petitioner-appellant.

James A. Maloney, Atty. Gen., John A. Darden, Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

OMAN, Justice.

Defendant was convicted of second degree murder on September 3, 1957, upon his plea of guilty. He was thereupon sentenced to imprisonment in the State Penitentiary for a term of from three years to life.

He is now before us on appeal from an order denying his motion for post-conviction relief filed pursuant to Rule 93, Rules of Civil Procedure for the District Courts [§ 21–1–1(93), N.M.S.A.1953 (Repl.Vol. 4, 1970)]. We affirm.

His four points relied upon for reversal will be considered in the order of their presentation in the briefs. The first is:

"That the trial court erred in refusing to find that the statement given to the New Mexico State Police * * * in August of 1957 was involuntary for the reasons that coercion was used by the New Mexico State Police and that petitioner was not afforded the opportunity of counsel at any time prior to signing the confession."

At the evidentiary hearing on his Rule 93 motion, the confession, or statement, was received into evidence. Defendant testified at the hearing that he had been subjected to coercive conduct by the State Police. However, the trial court did not accept this testimony as true, but found: "The Statement given by Petitioner to the State Police * * * in August of 1957 was a voluntary statement, and no threats nor coercion were used against him."

Defendant identified the statement as the one he had given and signed and testified as follows in relation thereto:

"Q. What about this confession that you signed, was that confession the truth or was it not the truth?

"A. It was the truth."

Later in his testimony he claimed the police directed him to write the following portion of the statement:

"I, John Doyle Burton, am twenty-four years of age and reside at Melrose, N. Mex. I give the following statement of my own free will and accord without duress or threat and without promise of clemency. * * * I have been advised I do not have to give a statement to anyone and if I do anything I say may be used against me in a criminal court of law."

■ His testimony at the hearing on his motion differed greatly in many respects from what is contained in his signed statement of 1957 as to the events leading to the homicide and his actions thereafter. Under these circumstances the trial court was not obliged to accept his testimony as to the claimed coercion and threats by the State Police in securing the statement from him. Samora v. Bradford, 81 N.M. 205, 465 P.2d 88 (Ct.App.1970); Hales v. Van Cleave, 78 N.M. 181, 429 P.2d 379 (Ct.App.1967).

■ The finding by the trial court that the statement was voluntary, and that no coercion or threats had been used by the police, is supported by the language of the statement itself and by defendant's testimony that the statement was true. The statement, as already shown, was received into evidence, and a finding supported by substantial evidence will not be disturbed on appeal. State v. Johnson, 81 N.M. 318, 466 P.2d 884 (Ct.App.1970).

There is nothing in the record to suggest the statement ever came to the attention of the trial judge who accepted the voluntary plea of guilty and entered the conviction thereon, and the statement was certainly not received into evidence against defendant at any evidentiary proceeding leading to his conviction, because there was no such proceeding. Therefore, the following cases upon which he relies do not support his position. State v. Word, 80 N.M. 377, 456 P.2d 210 (Ct.App.1969); State v.

Knerr, 79 N.M. 133, 440 P.2d 808 (Ct. App.1968); State v. Ortiz, 77 N.M. 316, 422 P.2d 355 (1967); State v. Gammons, 76 N.M. 85, 412 P.2d 256 (1966); State v. Garcia, 47 N.M. 319, 142 P.2d 552 (1943); Pearce v. Cox, 354 F.2d 884 (10th Cir. 1965); Wade v. United States, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

However, defendant urges that his knowing that he had given the statement operated coercively upon him in deciding to plead guilty and that he "* * * is entitled, at least, to a hearing to ascertain if the confession was in fact involuntary."

He has been given such a hearing on his Rule 93 motion, and, as shown above, the trial court found the statement, or confession, was voluntary. Under these circumstances, the fact that he was not furnished counsel prior to giving the statement is not a basis for setting aside his conviction. Compare Hanson v. State, 79 N.M. 11, 439 P.2d 228 (1968).

In his second point he asserts: "That the trial court erred in refusing to find that [he] was not advised fully by his attorney as to the possible penalties for second degree murder."

Defendant's attorney in 1957 is now a District Judge, and he testified at the hearing on the motion. His testimony was that he had advised defendant of the possible penalties. The trial court found defendant had been fully advised by competent counsel as to the penalties, and this finding is clearly supported by substantial evidence. The mere fact that defendant testified the attorney had told him the penalty would be imprisonment for a period of from three to twenty-five years, which was contrary to the attorney's testimony, did not make the attorney's testimony insubstantial. Fox v. Doak, 78 N.M. 743, 438 P.2d 153 (1968); State v. Mora, 81 N.M. 631, 471 P.2d 201 (Ct.App.1970).

In his third point he claims: "That the trial court erred in refusing to find that [he] was not fully advised by his attorney of all possible defenses to the charges against him."

The one possible defense about which he claims he was not advised was that of self-defense. In his testimony at the hearing on his motion he told an entirely different story about the claimed attack upon him by the person he killed than was told by him in his statement to the police in 1957. In the 1957 statement he did say as he and the murdered man were in the act of getting a beer out of the trunk of an automobile decedent struck him with "* * * his fist or something else," but that he had no cut or scratch to evidence the blow. He stated that they then began to fight, and he, defendant, "* * * picked up the jack out of the rear of the car and hit [decedent] with it," which laid decedent's head open and resulted in his death.

At the hearing on the motion, some thirteen years later, the attorney testified he had no clear recollection of defendant having told him of a fight between defendant and decedent. The attorney did, however, recall having fully discussed with defendant the charges of murder pending against him; the possible defense of intoxication, and particularly to the charge of first degree murder with which defendant was charged and which was dismissed upon his plea of guilty to second degree murder; the drinking by defendant and decedent and many of their movements prior to the homicide; the fact that defendant had "grasped the jack * * * and sort of used it like a hoe and literally chopped this man to death with it, at least he [decedent] had wounds which would seem to indicate that"; and that defendant had disposed of the body by dumping it into a dry well and then trying to burn it.

The fact the attorney after thirteen years does not recall having been told by defendant of a fight with decedent, if, in fact, there was such a fight, and if, in fact, defendant told the attorney of the fight, does not constitute a violation of any constitutional or other right which would make his conviction on a voluntary plea of

guilty subject to collateral attack under Rule 93.

█ The trial court's finding that "petitioner did not discuss with his attorney any fight between himself and the deceased. * * *" is supported by substantial evidence. This being the case, there could have been no obligation on or reason for the attorney to discuss with defendant the matter of self-defense. Compare State v. Gilbert, 78 N.M. 437, 432 P.2d 402 (1967); State v. Coates, 78 N.M. 366, 431 P.2d 744 (1967).

█ The failure of an attorney to advise a defendant of all possible defenses is no basis for a claim of incompetency of counsel. See State v. Tapia, 80 N.M. 477, 457 P.2d 996 (Ct.App.1969). Compare State v. Hines, 78 N.M. 471, 432 P.2d 827 (1967); State v. Crouch, 77 N.M. 657, 427 P.2d 19 (1967); Ewing v. State, 80 N.M. 558, 458 P.2d 810 (Ct.App.1969); State v. Knerr, supra.

In his final point defendant asserts: "That the trial court erred in refusing to find that Judge Hensley [who accepted the plea and imposed sentence] at the arraignment and at the sentencing failed to address the petitioner personally."

His claim is that it was the obligation of the trial court, at the arraignment and before accepting his plea of guilty, to inform him that the maximum possible penalty was life imprisonment. He relies upon State v. Knerr, supra, and State v. Gilbert, supra. Neither of these cases support his position. Here, as above shown, defendant was fully advised by competent counsel as to both the maximum and minimum penalties which could be imposed upon being adjudged guilty.

█ Besides, defendant admits the trial court asked if he understood the charge against him, and advised that "* * * it was a penitentiary offense." If defendant then failed to understand the possible consequences of his plea, he could have so announced or asked his attorney. In any event, his claimed failure to understand the consequences of his plea, under the circumstances here existing, is not ground for post-conviction relief. State v. Elledge, 81 N.M. 18, 462 P.2d 152 (Ct.App.1969); Roessler v. State, 79 N.M. 787, 450 P.2d 196 (Ct.App.1969).

The order denying the motion to vacate the judgment and sentence is affirmed.

It is so ordered.

COMPTON, C. J., and McMANUS, J., concur.