**UNITED STATES of America,
Plaintiff,**

v.

**Daniel Wayne BARNAWELL, Jenny Lou Everett, Defendants.**

**Crim. No. 12786.**

United States District Court,
S. D. California.

April 12, 1972.

**620**

———◆———

Harry D. Steward, U. S. Atty., by Stephen W. Peterson, Asst. U. S. Atty., San Diego, Cal., for plaintiff.

Gary J. Aguirre, Charles M. Sevilla, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendants.

## MEMORANDUM DECISION AND ORDER

GORDON THOMPSON, Jr., District Judge.

The defendant Barnawell has moved to suppress certain statements made by him to state and federal agents, and to suppress evidence of a handgun seized from the defendant at the time of his arrest. A pretrial evidentiary hearing was held on March 27, 1972, after which the Court took the motions under submission. Both parties have filed supplemental points and authorities which have been considered along with the original pleadings on file and the evidence adduced at the hearing.

## MOTION TO SUPPRESS EVIDENCE

In the early morning hours of February 9, 1972, Sgt. R. B. Smith of the Oceanside Police Department was contacted by one John Gundrum. Gundrum told Sgt. Smith that he had been picked up while hitchhiking in Texas by the defendant Barnawell and co-defendant Jenny Lou Everett. The trio, later joined by another male hitchhiker, traveled to Oceanside, California, where they rented a room at the Sea Horse Motel. Gundrum told Sgt. Smith that the two males were planning to rob the manager of the Sea Horse Motel. Gundrum also told Sgt. Smith that when he had returned to the motel room earlier that evening, he had been assaulted by the other male occupant, who had put a .22 caliber pistol to his head. Based upon this information, Sgt. Smith and several other Oceanside police officers went to the Sea Horse Motel for the purpose of arresting Gundrum's former companions. They had neither a search warrant nor an arrest warrant.

Sgt. Smith knocked on the door of the apartment and announced his presence, but received no answer. He continued to knock for approximately 8–10 minutes. One of the officers procured a passkey from the manager, but just as Sgt. Smith was about to insert the key in the lock, someone inside started to open the door. Sgt. Smith announced that he wished to speak with the occupants. The door then began to close, but Sgt. Smith placed his foot in the doorway and forced himself into the room. Immediately upon entering, the defendant Barnawell was observed standing with his arms raised holding a .22 caliber pistol in his left hand. All three occupants of the room were arrested for assault with a deadly weapon and conspiracy.

The crux of defendant's argument is that his arrest and the search of the room cannot be justified because the arresting officers did not establish Gundrum's reliability or have sufficient corroborating information. Defendant relies upon federal and state cases dealing with the reliability of informants.

This overlooks the obvious, however. Gundrum was no mere informant; he was the victim of an assault with a deadly weapon who had reported that crime to the police within a few hours of the assault. The police received this information between 1:15 and 3:00 A.M. They immediately took appropriate action to apprehend the defendants.

Furthermore, time was of the essence. Gundrum had indicated that the defendants were planning an armed robbery of the manager of the very motel in which they were staying. Under the circumstances it was imperative that the police

officers act quickly to prevent a crime from taking place. It would indeed be a strange situation if police officers were to be precluded from investigating reports of crimes which had already occurred and crimes that were about to be committed because the reports came from citizens of previously untested reliability.

When the officers announced the purpose of their visit to the occupants of the room, an attempt, even though feeble, was made to deny them access to the motel room. The defendant Barnawell was discovered with a pistol matching the description given by Gundrum in his hand. Under these circumstances the officers were more than justified in arresting Barnawell and seizing the pistol in his possession.

## MOTION TO SUPPRESS STATEMENTS

█ At 1:30 P.M. in the afternoon following his arrest, and while in custody, defendant Barnawell was contacted by two Oceanside police officers and advised of his constitutional rights. After the admonition, Barnawell requested counsel and the interview immediately ceased. The Oceanside police then notified an agent of the Alcohol, Tobacco and Firearms section of the Internal Revenue Service that they had in their possession a firearm that had been transported in interstate commerce. The federal agent came to the Oceanside Police Department at approximately 2:30 P.M. and conferred with the two police officers who had talked to Barnawell earlier. The police officers did not tell the federal agent that Barnawell had requested counsel. All three then questioned co-defendant Everett.

The three officers then contacted Barnawell again. One of the Oceanside officers readvised Barnawell of his rights, after which the federal agent again advised him of his rights. The federal agent told Barnawell that he was not interested in the state assault and conspiracy charges but was interested only with the firearm that was taken from Barnawell. At least one of the Oceanside officers participated in the interrogation.

After a short period of questioning Barnawell admitted that he had obtained the firearm taken from his possession from a hitchhiker who had told Barnawell that the gun was stolen. At this point Barnawell again stated that he did not want to answer any further questions and that he wanted a lawyer. The interview immediately ceased.

The defendant argues that this second interrogation amounts to a classic violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), which explicitly stated that no questioning can be permitted after the defendant indicates in any manner that he wishes to remain silent or that he desires an attorney.

This is not a case where *Miranda* warnings were not administered at all or were defective in some respect and later statements by the defendant were held to be tainted by earlier irregularity. Here, defendant Barnawell was properly advised twice that he had a right to an attorney. This case is remarkably similar to Jennings v. United States, 391 F. 2d 512 (5th Cir. 1968), where the defendant was initially advised by police and he refused to make a statement. One hour later an FBI agent arrived, and, unaware of the defendant's previous refusal to talk, the defendant was readvised and made a statement later admitted at trial. The Fifth Circuit, in holding the statements admissible, said:

. . . Jennings was first thoroughly warned by the Fort Pierce police. He found out that immediately upon expressing an unwillingness to proceed the interrogation would promptly stop. He had been in custody only about an hour, and the questioning had been brief. When the F.B.I. agent repeated the warnings, appellant for some reason satisfactory to himself, failed to express the same unwillingness theretofore exercised against the local police. The situation lacks a long way of coming within the *Westover* [Wes-

tover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694] rule. There was no error in the admission of the statement obtained by the F.B. I.

391 F.2d at 516.

The instant case is perhaps distinguishable on its facts from *Jennings*. In this case the Oceanside police officers participated in the interrogation conducted by the federal agent. Nevertheless, just as the appellant in the *Jennings* case, Barnawell chose to answer certain questions posed to him "for some reason satisfactory to himself," 391 F.2d at 516, after being three times advised of his rights. This Court is satisfied that those statements were voluntarily made with a full and complete understanding of his rights.

The Court has also examined the facts herein against the backdrop of 18 U.S.C. § 3501(a) and (b), and is convinced that the statements were voluntary.

Accordingly, the defendant's motions to suppress evidence and statements are denied.

It is so ordered.