**Fred A. BROWN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9435.**

District of Columbia Court of Appeals.

Argued March 16, 1976.

Decided June 28, 1976.

Michael L. Rankin, Washington, D.C., appointed by the court, for appellant.

Richard A. Graham, Asst. U. S. Atty., Washington, D.C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and Roger C. Spaeder, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Before KELLY and FICKLING, Associate Judges, and PAIR, Associate Judge, Retired.

PER CURIAM:

Two errors are alleged in this appeal from convictions of second-degree murder, armed robbery, first-degree burglary while armed and carrying a dangerous weapon.[1] One is the denial of appellant's motion to produce, after Jencks Act demands, notes taken by the prosecutor in pretrial interviews of two government witnesses; the other, the denial of appellant's pretrial motion to suppress statements purportedly taken by a police officer in violation of his *Miranda*[2] rights. We affirm.

After each of two government witnesses testified about interviews with the Assistant United States Attorney, counsel moved that the prosecutor's notes of these interviews be produced. In each instance the prosecutor informed the court that in his opinion the notes were not *Jencks* material and offered to submit them to the court for *in camera* inspection. The court reviewed the proffered notes and thereafter denied the motions to produce on the grounds that the defense was not entitled to inspect the prosecutor's work product and, in any event, that nothing in the notes would assist in the defense of the case.

■ It is settled that there is no work product exception to the Jencks Act for a prosecutor's notes. *Goldberg v. United States,* — U.S. —, 96 S.Ct. 1338, 47 L. Ed.2d 603 (1976); *Matthews v. United States,* D.C.App., 322 A.2d 908 (1974). Nevertheless, the trial judge properly refused to order production of the notes in question after *in camera* inspection, an ap-

proved form of inquiry in these circumstances. *Matthews v. United States, supra.* The subject notes, which we have also viewed,[3] are merely random notations of background material—age, address, place of employment, and the like—and cannot be termed a substantially verbatim recital of oral statements of the witnesses.[4] Nor are they relevant, except peripherally, to the subject matter of the witnesses' testimony.[5] *See Saunders v. United States,* 114 U.S.App.D.C. 345, 316 F.2d 346 (1963). Accordingly, it was not error to deny the motions to produce.

■ Appellant was given a *Miranda* warning at the scene of his arrest. His rights were read to him from PD Form 47 in the scout car. At police headquarters appellant answered the questions on the reverse side of PD Form 47 and signed the form. He then gave an oral statement to Sergeant Robert Sharkey of the Metropolitan Police, admitting the homicide but claiming that he acted in defense of himself during a quarrel over the performance of an unnatural sex act. Meanwhile, Detective John R. Chaillet had gone back to the scene of the arrest to retrieve a gun which he had seen appellant throw away. When he returned to headquarters, he commenced filling out PD Form 163, the prosecution report. Appellant then told Detective Chaillet, whom he apparently disliked, that he did not wish to answer questions until he spoke with an attorney. The officer stopped questioning appellant and allowed him to make several telephone calls. Sometime thereafter, Sharkey, who was unaware of appellant's request for counsel, independently resumed his conversation with appellant. Appellant gave

1. D.C.Code 1973, §§ 22-2403; -2901, -3202; -1801(a), -3202; and -3204, respectively.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The notes were put under seal and are a part of the record on appeal. *See* 18 U.S.C. § 3500(c) (1970).

4. *See* 18 U.S.C. § 3500(e)(2) (1970). *Goldberg v. United States, supra,* does not preclude this court from making this determination.

5. *See* 18 U.S.C. § 3500(b), (c) (1970).

Sharkey a second oral account of the occurrence and his statements were then reduced to writing. The written statement was prefaced by a written *Miranda* warning which appellant acknowledged he understood by placing his signature below the warning. He also initialed each of the four pages of the statement and signed it, acknowledging that he had read the statement, that it was voluntarily given, and that it was true and correct. The statement was essentially exculpatory in nature.[6]

Appellant was informed of his *Miranda* rights repeatedly during the course of the investigation of the homicide. He twice executed written waivers of those rights. He also testified at the motions hearing

that he was generally cognizant of those rights from previous arrests, that he had been represented by counsel on prior occasions and knew their names. There was no evidence of any coercive circumstance which would belie the idea that appellant's statement to Sergeant Sharkey was willingly and voluntarily given. Indeed, all evidence is to the contrary. Therefore, we conclude that despite the request of Detective Chaillet for counsel at one point during the evening, appellant knowingly and intelligently waived his constitutional rights. *In re M. D. J.,* D.C.App., 346 A.2d 733 (1975).[7]

The judgments of conviction on appeal are

*Affirmed.*

---

6. The trial court found that the statement was "certainly more beneficial to the defendant than the Government."

7. *See Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).