572 P.2d 935

**STATE of New Mexico, Plaintiff-Appellant,**

v.

**A. Alan GREENE, Defendant-Appellee.**

**No. 11374.**

Supreme Court of New Mexico.

Dec. 30, 1977.

Fred Chris Smith, Farmington, Toney Anaya, Atty. Gen., Roderick A. Dorr, Ernesto J. Romero, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant.

Jan A. Hartke, Chief Public Defender, Reginald J. Storment, Appellate Defender, William H. Lazar, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

FEDERICI, Justice.

Defendant-appellee, A. Alan Greene, is charged with first degree murder under § 40A–2–1, N.M.S.A.1953 (Repl.1972). Defendant was arraigned in magistrate court in Farmington, New Mexico, on October 4, 1976. At this time defendant filled out and signed an application for appointment of counsel and certificate of indigency and requested that the court appoint an attorney

to represent him. A preliminary hearing was subsequently held on October 11, 1976, and defendant was arraigned in the District Court of San Juan County on November 1, 1976. At this time an order appointing counsel was entered by the district court. On November 18, 1976, defendant filed a motion seeking suppression of all oral and written statements made by him to officers of the Tampa, Florida and Farmington, New Mexico police departments, and suppression of a .22 caliber hand gun alleged by police to be the murder weapon. Following an evidentiary hearing at which both the State and the defendant called, examined and cross-examined witnesses, the district judge ordered the suppression of all statements made by defendant to police officers and suppression of the gun as evidence. The State appeals from that order of the district judge, contending that the district judge's conclusions of law are based upon erroneous application of legal principles drawn from *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and progeny cases. Our careful review of the record convinces us that the trial court applied an incorrect rule of law to the facts adduced at the suppression hearing. For that reason, we reverse the order of the district judge and remand the cause for further proceedings consistent with the views expressed in this opinion.

This appeal arises from a series of events occurring between September 29 and October 9, 1976, during which time the defendant-appellee made incriminating statements to police officers from Tampa, Florida, and Farmington, New Mexico. The last of these statements was made to Farmington officers on October 9, 1976, and resulted in recovery of the alleged murder weapon.

The record indicates that defendant was arrested in Tampa at approximately 4:00 p. m. on September 30, 1976, upon authority of a New Mexico fugitive warrant, charging him with first degree murder. Upon arrest defendant was given full "*Miranda* warnings," and indicated that he did not wish to make any statement. At 5:00 p. m. on that same day, defendant spoke to Farmington authorities by telephone, in the presence of

officers of the Tampa police department. After receiving full *Miranda* warnings from the Farmington authorities, defendant stated that the police would be "wasting their time" until he had consulted counsel, and that he did not wish to incriminate himself. The State, in its brief to this Court, has characterized this statement by defendant as an effective invocation of his right to counsel, and we think that this characterization is the only fair one.

Some three hours after speaking to the Farmington police, defendant was approached by a Tampa police detective who had not been present during the telephone conversation and asked if he would like to talk. At this time defendant was again given full *Miranda* warnings by the Tampa detective and waived his right to remain silent and his right to have an attorney present. During the course of the fifty-minute interview which followed, defendant made incriminating statements concerning the murder of his father. Defendant was then returned to his cell in the Tampa jail.

At 9:30 p. m. of the same evening, after calling the Farmington police to confirm details of the defendant's initial statements, the Tampa detective again brought defendant to an interrogation room in the Tampa jail. At this time defendant was again given full *Miranda* warnings, indicated that he understood them, recited them back to the Tampa detective, and again waived the rights contained in those warnings. The defendant then made additional incriminating statements to the Tampa detective, and was returned to his cell. The district judge found that between these two interviews of September 30, and for the remainder of the night of September 30, defendant was stripped and kept completely naked in his cell. Both of these September 30 statements were suppressed by the district judge.

On October 1, 1976, defendant waived extradition before a Florida judge and was turned over to Farmington, New Mexico and Colorado police officers. The record indicates that before beginning the trip

back to New Mexico, defendant was again given full *Miranda* warnings by the Farmington officers and instructed that the Farmington officers did not wish to interrogate defendant in any fashion during the trip. On October 3, 1976, while waiting in transit at the Kansas City Airport, defendant allegedly made an incriminating remark. The record indicates that *no* police interrogation preceded this statement, which defendant denies making. This statement was also suppressed by the district judge.

On the morning of October 4, 1976, having been returned to Farmington late the preceding evening, defendant was questioned for the first time by Farmington police officers. This questioning was preceded by a recitation of *Miranda* warnings. At this time, defendant indicated that he understood and wished to waive those rights and signed a *written* waiver of rights form. Defendant then made an oral statement which was recorded in shorthand by a secretary and subsequently transcribed. Defendant refused to sign the statement. This statement was also suppressed by the district judge. Later this same day defendant was arraigned before a magistrate, filled out and signed an application for appointment of counsel and certificate of indigency, and requested that the court appoint an attorney to represent him. No order appointing counsel was entered, and defendant remained without counsel.

On October 9, 1976, defendant made the final statement in issue. It is uncontested that this statement was *not* preceded by full *Miranda* warnings, but the State contends that defendant, who had been last advised of his rights on October 4, was told that his "rights still applied." Defendant then made a statement revealing the location of the alleged murder weapon, which was subsequently recovered by Farmington police. Both this statement and the weapon itself were suppressed by the district judge.

Following the suppression hearing the district judge entered findings of fact to the effect that the defendant's statements were not voluntarily, knowingly and intelligently made because defendant's will was overcome by the failure of the Tampa authorities to halt interrogation or obtain counsel for defendant upon his initial request therefor on September 30, and that all later statements to Farmington authorities were "fruit" of the earlier statements made to the Tampa officers. The alleged murder weapon was also viewed by the district judge as "fruit" of the statements taken, in contravention of defendant's rights under the fifth, sixth and fourteenth amendments to the Constitution of the United States.

The issues presented are these: first, whether the district judge correctly suppressed the statements made by defendant on September 30, October 4 and October 9, 1976; second, whether the district judge correctly suppressed the statement allegedly made by defendant at the Kansas City Airport on October 3, 1976; and third, whether the trial judge correctly suppressed the alleged murder weapon, recovered as a result of defendant's oral statement of October 9, 1976.

*Defendant's Statements of September 30, October 4 and October 9, 1976.*

As phrased by the State, the question raised by the district judge's suppression of these statements and confessions is this: May an accused person in custody, having once invoked his right to the presence of counsel upon being advised of his "*Miranda* rights," subsequently *waive* his right to have counsel present during questioning and proceed to make inculpatory or exculpatory statements which the State may thereafter use as evidence at trial? We hold that an accused *may* so waive his previously invoked right to counsel, for reasons personal to himself, but that the State has a heavy burden imposed upon it of demonstrating that such a waiver is knowing and voluntary.

This question appears with increasing regularity in the reported state and federal decisions. The question arises because of ambiguity in the leading case of *Miranda v.*

*Arizona, supra.* That decision was designed to safeguard the fifth amendment rights of persons in police custody by prohibiting the use of statements made by an accused individual in police custody unless the prosecution demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. These procedural safeguards have come to be known as the familiar *"Miranda* rights" or *"Miranda* warnings." *See* Annot., *The Progeny of Miranda v. Arizona in the Supreme Court,* 46 L.Ed.2d 903, 907 (1977). The ambiguity arises in determining the procedures to be followed *after* the required "warnings" have been given. These procedures were outlined in the original *Miranda* decision, at 384 U.S. 473 to 475, 86 S.Ct. 1627 to 1628, as follows:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, *the interrogation must cease.* At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, *the interrogation must cease until an attorney is present.* At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. . . . *If the interrogation continues without the presence of an attorney and a statement is taken,* a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo v. State of Illinois,* 378 U.S. 478, 490, n. 14, 84 S.Ct. 1758, 1764, 12 L.Ed.2d 977. (Emphasis added, footnote omitted.)

Two situations are contemplated by the above passage. First, the defendant may, after receiving *"Miranda* warnings," invoke his *right to remain silent,* in which case "the interrogation must cease." Second, the accused may invoke his *right to have counsel,* in which case "the interrogation must cease until an attorney is present," although the passage goes on to suggest that continued questioning may result in admissible statements by the accused if the prosecution can carry the "heavy burden" of demonstrating intelligent waiver of the accused's "right to retained or appointed counsel." These rules do not squarely decide whether *successive* police interrogations, each conducted after the proper *Miranda* warnings, are permissible.

The ambiguity presented by the first of these situations, where the accused invokes his right to remain silent, has been recently resolved by the United States Supreme Court. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). The State contends that the *Mosley* decision is controlling of this appeal, which concerns the second of the above situations, where the accused has invoked his right to counsel upon receiving proper *Miranda* warnings.

In *Mosley, supra,* an accused person had been arrested in connection with certain robberies. After receiving *Miranda* warnings, the accused invoked his *right to remain silent* by declining to discuss the robberies. More than two hours later, after again giving the accused his *Miranda* warnings, another detective questioned the accused solely about an unrelated murder. The accused made an inculpatory statement, which was later used in his conviction for the murder. The appellate court reversed the conviction on the ground that *Miranda, supra,* mandated a cessation of *all* interrogation after the accused had declined to answer the first detective's questions. The United States Supreme Court reversed the appellate court.

In deciding the *Mosley* case, the Supreme Court stated that the above-quoted passage from *Miranda* does not state under what circumstances, if any, a resumption of police interrogation is permissible when the

accused has once invoked his right to remain silent. *Michigan v. Mosley*, 423 U.S. 96, 101, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). In resolving this narrow dilemma, the Court first ruled that the *Miranda* requirement that police interrogation must cease when the person in custody indicates his desire to remain silent does not create a *per se* proscription of indefinite duration upon further questioning by police officers, at any time and upon any subject. The Court then ruled that the admissibility of incriminating statements obtained after a person in custody had initially decided to remain silent depends upon whether his right to cut off questioning has been scrupulously honored. *Michigan v. Mosley, supra,* at 423 U.S. 104, 96 S.Ct. 321. *See* Annot., *The Progeny of Miranda, supra,* at p. 915.

The analysis and holding of *Michigan v. Mosley* do not control the instant case, however, for the Supreme Court in *Mosley* specifically declined to resolve the problem presented by successive interrogations conducted after the person in custody has invoked his right to counsel. This is made clear at 423 U.S. 101, fn. 7, 96 S.Ct. at 325 where the Court states: "The present case does not involve the procedures to be followed if the person in custody asks to consult with a lawyer, since Mosley made no such request at any time." As indicated earlier in this opinion, the State in its brief has characterized an early statement by defendant-appellee as an effective invocation of his right to counsel, and we agree with that characterization. Thus, the question to be resolved in this appeal is still open following the *Mosley* decision.

Some jurisdictions, even after the *Mosley* opinion, have adopted the view that *Miranda* leaves no room for compromise when an accused person in custody has once invoked his right to counsel. *State v. Boggs,* 16 Wash.App. 682, 559 P.2d 11 (1977). This view has been stated as follows:

It has recently been decided that a defendant who has exercised his *Miranda* right to remain silent, and whose right to cut off questioning has been "scrupulously honored" by the police, may nevertheless be subsequently questioned under appropriate circumstances to elicit admissible statements. *Michigan v. Mosley* . . . . But it apparently remains the rule even after *Michigan v. Mosley, supra,* that a suspect who cuts off police questioning by requesting the presence of counsel, cannot constitutionally be questioned thereafter by the police until he obtains the advice of an attorney. [Citations omitted.]

*State v. Haynes,* 16 Wash.App. 778, 559 P.2d 583, 589 (1977).

We reject this view as unnecessarily rigid and beyond the scope and intent of the original *Miranda* decision. We adopt instead a more flexible view which has been recently expressed as follows:

In *Mosley* the Court rejected a literal interpretation of *Miranda,* holding that the exercise of the right to remain silent does not preclude all further questioning. . . . Although the specific holding in *Mosley* is not direct precedent for the resolution of this appeal, *Mosley* does indicate both a recognition that the procedure set out in *Miranda* is not as clear as the language of that opinion might suggest and a willingness to impart a greater degree of flexibility in the application of *Miranda* to varying factual situations.

We have concluded that a waiver of rights under *Miranda* can occur despite an earlier demand to have an attorney. . . . The Government, of course, bears a "heavy burden * * * to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." [Citation omitted.]

*United States v. Pheaster,* 544 F.2d 353, 367–368, U.S. *cert. denied,* (9th Cir. 1976). See also the following cases for their varied reasoning and uniform holdings: *Brown v. United States,* 359 A.2d 600 (D.C.Ct.App. 1976); *State v. Grange,* 25 Ariz.App. 290, 543 P.2d 128 (1975); *United States v. Hodge,* 487 F.2d 945 (5th Cir. 1973); *United States v. Barnawell,* 341 F.Supp. 619 (S.D. Cal.1972); *Nash v. State,* 477 S.W.2d 557, U.S. *cert. denied,* 409 U.S. 887, 93 S.Ct. 191, 34 L.Ed.2d 144 (Tex.Cr.App.1972); *United States v. Grady,* 423 F.2d 1091 (5th Cir. 1970).

We hold that (1) once a person is arrested and has asserted his right to counsel he may, upon receiving new and adequate "*Miranda* warnings," change his mind for reasons satisfactory to himself and voluntarily submit to questioning, and (2) once the right to counsel has been effectively invoked, the State bears a heavy burden in demonstrating that a subsequent waiver is knowing and voluntary. This rule, in our judgment, meets both the spirit and the letter of the *Miranda* decision, and is consistent with our own developing case law. *See, State v. Ramirez*, 89 N.M. 635, 556 P.2d 43 (Ct.App.1976); *State v. Lopez*, 80 N.M. 130, 452 P.2d 199 (Ct.App.1969).

A determination of the voluntariness of the subsequent waiver depends not merely on a formal utterance of waiver, but upon all the facts and circumstances of the particular case. *State v. Crump*, 82 N.M. 487, 484 P.2d 329 (1971). These facts and circumstances include the background, experience and conduct of the accused. *State v. Sexton*, 82 N.M. 648, 485 P.2d 982, *cert. denied*, 82 N.M. 639, 485 P.2d 973 (Ct.App. 1971). It is for the trial judge in the first instance to hear the evidence as to voluntariness, weigh the conflicts in the evidence presented at the suppression hearing, and determine whether the State has carried its "heavy burden." Where there is evidence to support the ruling of the trial court, we will not find error as a matter of law. *State v. Ramirez, supra.*

The State contends that the district judge applied a *per se* rule prohibiting *any* successive interrogation of a defendant who has once invoked his right to have counsel present, and therefore erred as a matter of law in suppressing the defendant's statements and confessions. We agree. The record indicates that the trial judge applied the strict rule, rejected by us in this opinion, that once an accused has invoked his right to counsel upon receiving *Miranda* warnings, there may be no further or successive interrogation until the accused has consulted counsel. That this view was the basis of the district judge's order suppressing all of the statements made by defendant is made clear by this statement, made from the bench during the course of the suppression hearing:

It's my holding that you can read that waiver to them until you're blue in the face; if they at one time request an attorney, you better see that they get a chance to talk to an attorney.

Because it is clearly derived from the application of an incorrect rule of law to the facts developed at the suppression hearing, the order of the district judge suppressing the defendant's statements of September 30, October 4 and October 9 is reversed. The cause is remanded to the district court for application of the rule, as announced in this opinion, to the facts adduced at the suppression hearing or at any further hearings on the matter which the district judge may order.

It is true, as defendant-appellee argues in his brief, that an additional consideration is raised concerning defendant's statement of October 9, inasmuch as this statement was taken from him by Farmington authorities following his arraignment on October 4. At that time defendant had filled out and signed a request for counsel and affidavit of indigency, and requested that counsel be appointed to represent him. "[T]here is no doubt that the right of one charged with a crime to be represented by counsel at every critical stage of a criminal proceeding is fundamental and required in state courts." *State v. Tapia*, 75 N.M. 757, 411 P.2d 234 (1966). It is the settled law of this jurisdiction that the right to be furnished counsel extends to every critical stage of the criminal proceedings. *State v. Acuna*, 78 N.M. 119, 428 P.2d 658 (1967). It is also clear that defendant's right to counsel attached, with or without his request, when he was arraigned and completed his affidavit of indigency. *State v. Rascon*, 89 N.M. 254, 550 P.2d 266 (1976).

The essential inquiry, however, remains unchanged, for it is also well-settled that this Sixth Amendment right to counsel may be voluntarily waived. *State v. Maples*, 82 N.M. 36, 474 P.2d 718 (Ct.App.1970). Again, the State has the burden of showing a knowing and intelligent waiver. *State v.*

*Sanchez*, 85 N.M. 368, 512 P.2d 696 (Ct.App. 1973).

### The October 3 "Airport Statement."

 Lt. Paul Houser, a Farmington, New Mexico police officer, testified at the suppression hearing that he, another Farmington officer and a Colorado police officer traveled to Tampa for the purpose of transporting the defendant back to New Mexico following the defendant's waiver of extradition before a Florida judge. Lt. Houser testified that while this party was awaiting a connecting flight to New Mexico in the Kansas City Airport, the defendant asked if he could read the officer's newspaper. While thumbing through the newspaper, the defendant allegedly asked Lt. Houser if a body found in Montrose, Colorado had been identified. When Lt. Houser replied that it had not, the defendant allegedly said: "I'll save you the trouble. It's my father." The lieutenant further testified that no questions were asked of defendant either before or after this statement was made.

The trial court suppressed the defendant-appellee's remark, and the State contends erroneously so. The basis of the trial court's ruling is not clear from the record, but the remark was apparently viewed by the district judge as the direct result of the continuing violation of defendant-appellee's fifth, sixth and fourteenth amendment rights. We reverse the district judge's ruling that the statement be suppressed.

The Farmington officers testified that they gave full *Miranda* warnings before departing Florida for New Mexico, and that they further instructed him that they did not intend to interrogate him during the trip. The defendant-appellee, although he denies making the statement regarding the identity of the body, acknowledged that he was not interrogated during the trip, either before or after the time of the purported statement. The statement appears clearly to have been a spontaneous and volunteered remark by the defendant, not made in response to interrogation or even suggestion by the police officers. It has long been the law of this jurisdiction that the admission into evidence of volunteered statements is not prohibited by the fifth and fourteenth amendments, where there are no facts to indicate that the statement is made in response to "interrogation." *State v. Ferrari*, 80 N.M. 714, 460 P.2d 244 (1969). Volunteered statements of any type are not barred by the fifth amendment, and their admissibility is not affected by *Miranda v. Arizona, supra.* *State v. Valenzuela*, 114 Ariz. 81, 559 P.2d 201 (1977); *Grizzle v. State*, 559 P.2d 474 (Okl.Cr.1977). On facts substantially identical to those presented by the instant case, the Pennsylvania Supreme Court has held that such volunteered incriminating statements made to officers, not made in response to police questioning, were admissible because the product of choice or the result of conscience, rather than compulsion. *Commonwealth v. Powell*, 459 Pa. 253, 328 A.2d 507 (1974). A divergent line of cases, of which *Clewis v. Texas*, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967), is the leading case, does not lead us to a contrary conclusion. On this record, it is clear that there is a "break in the stream of events . . . sufficient to insulate the statement from the effect of all that went before." *Clewis v. Texas, supra*, at 386 U.S. 710, 87 S.Ct. at 1340. Here, the defendant-appellee had been again advised of his *Miranda* rights before departing Florida. He had been physically removed from the custodial setting of his earlier interrogation, and has acknowledged on the record that he was not interrogated at any time during the trip from Florida to New Mexico. On these facts, we hold that the October 3 "airport statement" was erroneously suppressed by the trial court.

### The .22 Caliber Gun.

 The trial court concluded that the statement taken from the defendant-appellee by Farmington authorities on October 9 was the result of a *Miranda* violation. That is, that the statement was the product of successive interrogation conducted after defendant-appellee had invoked his right to counsel. The district judge further found as fact that the discovery and seizure of the pistol was the direct result of the defendant's statement. Applying the exclusionary

rule known as the "fruit of the poisonous tree doctrine," *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the district judge suppressed the pistol as evidence. .

The question of whether *Miranda v. Arizona, supra,* requires the exclusion of derivative evidence acquired as the result of an initial *Miranda* violation has not been decided by the United States Supreme Court. Annot., *The Progeny of Miranda v. Arizona in Supreme Court,* 46 L.Ed.2d 903, 923 (1977); Shapiro, *Miranda Without Warning: Derivative Evidence as Forbidden Fruit,* 41 Brooklyn L.Rev. 325, 329 (1975), citing *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).

Most of the state and lower federal courts which have considered the admissibility of secondary evidence derived from *Miranda* violations have applied the "fruit of the poisonous tree" doctrine. *Shapiro, supra,* 41 Brooklyn L.Rev. at p. 332. The reasoning behind this approach was succinctly stated in an early federal decision: "The seizure is thus the direct result of the unlawful questioning; everything that was taken, therefore, is inadmissible at trial. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 . . . ." *United States v. Harrison,* 265 F.Supp. 660 (S.D. N.Y.1967).

We agree, in principle, that courts must be willing to bar the physical fruits of inadmissible statements and confessions, as well as the confessions and statements themselves. However, because the admissibility of the .22 caliber gun turns entirely on the legality of the October 9 interrogation which led to its recovery, the trial court's suppression of the gun is reversed and remanded for reconsideration along with the statement which led to its recovery.

In summary, we hold:

First, that an accused person in custody, having once invoked his right to have counsel present after being advised of his rights under *Miranda v. Arizona, supra,* may subsequently change his mind, waive his right to have counsel present, and give statements admissible in evidence at a subsequent trial;

Second, that such an accused person having once invoked his right to have counsel present, the State bears a heavy burden in demonstrating that a subsequent waiver of that right was knowing and voluntary;

Third, that the district judge misapprehended the rule of law to be applied where successive police interrogations follow an accused person's initial invocation of his right to counsel and that, therefore, the district judge's order suppressing the defendant-appellee's statements of September 30, October 4 and October 9 is reversed and remanded for application to the facts of the rule of law as announced in this opinion;

Fourth, that the admission into evidence of spontaneous and voluntary statements, not given in response to police questioning, is not prohibited by the fifth amendment of the United States Constitution and, therefore, that the order of the district judge suppressing the defendant-appellee's statement of October 3 is reversed.

IT IS SO ORDERED.

EASLEY and PAYNE, JJ., concur.