# Richmond

Dwight Arlyn Bunting v. Commonwealth of Virginia.

October 9, 1967.

Record No. 6567.

Present, Eggleston, C.J., Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.*

*Robert L. Murphy* for plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for defendant in error.

I'Anson, J., delivered the opinion of the court.

Defendant, Dwight Arlyn Bunting, was convicted of rape by a jury and on February 20, 1961, was sentenced in accordance with the jury's verdict to life imprisonment in the State penitentiary.

In a later proceeding, praying for the issuance of a writ of habeas corpus, the trial court held that defendant had been denied his right to perfect an appeal from the judgment and verbally directed de-

---

*Justice Spratley, prior to the effective date of his retirement, participated in the hearing and concurred in the disposition of the case.

fendant's court-appointed attorney to work with the Commonwealth's attorney of the City of Alexandria in preparing a narrative statement of the evidence introduced at defendant's trial in 1961 in order that he might apply for a writ of error to this court. The court further directed that the statement be submitted for approval and certification by the trial judge within sixty days from the date of its ruling, July 29, 1966, and stated that if these procedures could not be complied with defendant should be granted a new trial. No judgment order granting the writ of habeas corpus and embodying the verbal ruling of the court was entered at that time.

A satisfactory narrative of the evidence was not submitted within the sixty-day period, and on October 11, 1966, the court entered an order overruling defendant's motion for a new trial and allowed an additional ten days for the preparation of the statement. An acceptable narrative was then prepared within the time prescribed, certified by the trial judge, and defendant is here on a writ of error to the judgment of February 20, 1961.

Defendant contends that the court erred: (1) In admitting in evidence defendant's oral confession made two days after his written confession which the court held inadmissible because it was not made voluntarily; (2) In admitting certain photographs in evidence; (3) In not setting aside the verdict of the jury for failure of the Commonwealth to prove the corpus delicti; and (4) In refusing to grant a new trial since the narrative statement of the evidence was not submitted within sixty days from July 29, 1966.

The narrative of the evidence shows that when the prosecutrix, Maura K. Seymour, retired for the night in the bedroom of her home in Alexandria, Virginia, on May 7, 1960, she left the light burning in the room. Approximately two hours later she was awakened by the presence of a man in her bed, and the light had been turned off. Her assailant, whom she was unable to identify because the room was dark, had sexual relations with her by force and immediately left the premises. After discovering that the light bulb was loose in the socket, she tightened the bulb and the light came on. She then telephoned the police. Prosecutrix noticed that her assailant had removed the screen from her bedroom window and that he had left the front door of the premises open when he departed.

Detectives Allen and Keadle interrogated the defendant when he voluntarily came to police headquarters around 3 p.m. on the afternoon of October 3, 1960. Allen testified that defendant "had signed

certain statements or confessions," and further questioning of the witness as to whether the confessions were voluntarily made was conducted out of the presence of the jury. He said that the defendant was interrogated for approximately eight hours, during which time he confessed to a charge of housebreaking with intent to rape Gloria Stevens, but he denied that he was in any way implicated in the Seymour rape. The next morning he and Detective Keadle, accompanied by the defendant, searched defendant's home, without a warrant, and found some "girlie magazines" and photographs of a "scantily clothed female." In the afternoon of the same day a lie detector test was given defendant at his request. Allen further testified that during the interrogations of the defendant relative to the charge of rape of the prosecutrix, he told defendant that he could not get in any more trouble than he was already in and that he might as well tell all; that he (defendant) would feel better if he told everything; that the prosecutrix was pregnant as a result of the assault; that the court would see to it that he got help; and that it would be better to get both charges out of the way at the same time. Defendant finally stated that he had broken into prosecutrix's home and his statements were reduced to writing.

Defendant, also testifying out of the presence of the jury, said that during the course of the interrogation, Allen repeatedly told him that he needed medical attention; that they would see to it that he got the needed attention; and Allen assured him that he would not have to serve any time in the penitentiary.

At the conclusion of the above testimony the trial court ruled that the written statements made by the defendant to Allen were not made voluntarily and were thus inadmissible. However, the photographs taken from defendant's home were admitted in evidence.

The testimony of detective Fitzsimons relative to defendant's oral confession to him and detective Reid (now deceased) two days later was also heard out of the presence of the jury. After the trial court ruled that the statements of defendant to the detectives were made voluntarily, Fitzsimons testified before the jury as follows: That on October 6 he took defendant out of his cell to a room at police headquarters for the purpose of interrogating him relative to other unsolved "molesting cases." He was aware of the statements made by defendant to detectives Allen and Keadle. He told defendant, at the time of the interrogation, that he would "appreciate [his] cooperation and pointed out that things could not be worse than they are now."

After questioning defendant about other similar crimes, he asked defendant "whether he had in fact committed rape on Mrs. Seymour." Defendant's reply to the question was that he removed the screen from the bedroom window of the Seymour home; that he entered the building through the open window; and that he turned out the light by unscrewing the bulb.

Defendant, testifying in his own behalf before the jury, denied any implication in the Seymour case. He said that he made statements to Fitzsimons relative to the charge because the detective had told him he "was in so much trouble it would not make any difference." He was able to recite some of the details of the charge against him because he had been given copies of the police report and the facts had been related to him several times during prior interrogations. The photographs taken from his home were under lock and key and were pictures of his wife which were taken by him in the privacy of his home.

Defendant contends that the oral confession given to Fitzsimons was involuntary and inadmissible because the same influences causing him to make the original confession in writing, which was held by the trial court to be involuntary and inadmissible, continued to exist when the second confession was made.

[1] The burden of proving that a confession was voluntary rests upon the Commonwealth. *Jackson* v. *Commonwealth*, 193 Va. 664, 674, 70 S. E. 2d 322, 328 (1952); *Campbell* v. *Commonwealth*, 194 Va. 825, 830, 75 S. E. 2d 468, 471 (1953).

A confession obtained by such methods as to make it involuntary renders subsequent confessions made while an accused is under the operation of the same influences also involuntary and inadmissible in evidence. Once a confession is obtained under improper influences, the presumption arises that a subsequent confession of the same crime flows from the same influences. This presumption, however, is not a conclusive one, and may be overcome by clear and substantial proof that a second confession was made when the mind of the accused was free from the influence which induced the initial confession. *Mathews* v. *Commonwealth*, 207 Va. 915, 920, 921, 153 S. E. 2d 238, 241 (1967); *Thompson* v. *Commonwealth*, 61 Va. (20 Gratt.) 724, 730 (1870); 29 Am. Jur. 2d, Evidence, § 537, pp. 588-589; Underhill's Criminal Evidence, 4th ed. § 266, p. 521.

The influences which induced the original confession made by defendant to detective Allen are presumed to have continued when

the subsequent confession was made to detective Fitzsimons in the absence of evidence to the contrary. There is nothing in the scant record before us to show that the admitted influences which induced the original written confession, that defendant could not get in any more trouble than he was already in if he told everything and that the court would see to it that he got help, did not continue to influence the defendant at the time the oral confession was made to Fitzsimons. The narrative of the evidence does not show that defendant was advised that any statement made to Fitzsimons must be made freely and voluntarily on his part, without any promise of reward, and that what he said could and probably would be used against him at his trial. Nor can it even be inferred from the circumstances surrounding the confession made to Fitzsimons that defendant's mind was free of the earlier influences which induced the involuntary written confession.

It appears from the notes of the trial judge in the papers of the 1961 trial that *Early v. Commonwealth*, 86 Va. 921, 11 S. E. 795 (1890), was relied on in holding that although the written confession made to detective Allen was involuntary, "the influence of the inducement [of the original written confession] was totally done away with" when defendant made the oral confession to Fitzsimons; and that the confession was voluntary and admissible in evidence.

*Early* is clearly distinguishable from the present case. In that case there was evidence that the confession was made freely and voluntarily by the accused; that any prior improper influence had been completely dispelled; and that it appeared from the accused's own testimony that the promises made to him were not made by anyone in authority.

We hold that the oral confession made to detective Fitzsimons was involuntary and it was error to admit it in evidence.

[2] Defendant next says that the court erred in admitting in evidence the photographs taken from his home because they had no relevancy to the charges against him and were prejudicial to his case.

The Commonwealth argues that the photographs were relevant and material because they tended to show a mental attitude and a degree of sexual derangement on the part of defendant which were factors in proving him capable of committing the rape. *Enoch* v. *Commonwealth*, 141 Va. 411, 437, 126 S. E. 222, 230 (1925), is relied on in support of the argument. There the accused was convicted of murder of a young woman who had first been raped and then murdered,

and the trial court admitted in evidence over his objection certain lewd pictures of naked women found on the accused on the day of his arrest, two days after the crime had been committed. This court said, "Much may be said on both sides of the question, and it is not probable that the courts could agree on its proper solution," but went on to hold that the question of the admissibility of the pictures rested in the sound discretion of the trial court, and, as its judgment was not plainly wrong it would not be disturbed.

We do not think that *Enoch* can be relied on as authority for admitting in evidence the photographs in the present case. There the lewd pictures of naked women were found on the accused shortly after the young lady was raped and murdered. In the present case the pictures show defendant's wife in bed wearing what appears to be short pajamas. The evidence does not show when the photographs were taken and for what purpose. They were not taken from defendant's person but were found in his home months after the rape charge.

Evidence which has no tendency to prove guilt, but only serves to prejudice an accused, should be excluded on the ground of lack of relevancy. For evidence to be admissible it must relate and be confined to the matters in issue and tend to prove an offense or be pertinent thereto. Evidence of collateral facts or those incapable of affording any reasonable presumption or inference on matters in issue, because too remote or irrelevant, cannot be accepted in evidence. *Boggs* v. *Commonwealth*, 199 Va. 478, 486, 100 S. E. 2d 766, 772 (1957); 29 Am. Jur. 2d, Evidence, §§ 251, 252, pp. 299, 301, 303.

The photographs introduced in evidence have no causal relation or logical and natural connection with the guilt of the defendant and are irrelevant and immaterial to the charge against him. We said in *Day* v. *Commonwealth*, 196 Va. 907, 912-914, 86 S. E. 2d 23, 25-27 (1955), and *Barber* v. *Commonwealth*, 182 Va. 858, 863-867, 30 S. E. 2d 565, 566-569 (1944), that in a prosecution for rape, evidence of other sex crimes committed at a different time against another person is inadmissible to show the disposition of the accused to commit the crime charged. We cannot say that because the photographs only showed defendant's wife in short pajamas that it was harmless error to admit them in evidence. The jury could have given the same weight to the photographs as assigned by the Commonwealth for their admissibility. Hence their admission was prejudicial and prevented the

accused from having that character of an impartial trial to which one is entitled, however guilty he may be.

Since the judgment of the court below will have to be reversed and remanded for such further proceedings as the Commonwealth may deem advisable, it is unnecessary to discuss the remaining assignments of error.

*Reversed and remanded.*