456 P.2d 210

**STATE of New Mexico, Plaintiff-Appellee**

v.

**Harry WORD, Defendant-Appellant.**

**No. 83.**

Court of Appeals of New Mexico.

June 13, 1969.

Clyde E. Sullivan, Jr., Albuquerque, for appellant.

James A. Maloney, Atty. Gen., James V. Noble, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

HENDLEY, Judge.

Defendant appeals from a conviction of second degree murder.

On August 20, 1966 defendant was arrested for the murder of Julia Collum. During the morning of August 22 the police were advised by the district attorney's office that there was not sufficient evidence to justify holding defendant on the murder charge. Shortly thereafter defendant was taken to municipal court and sentenced to three days in the city jail for prior traffic violations.

On August 22 and 23 defendant gave his first and second statements, which were exculpatory.

On August 24 defendant was taken from jail by two police officers to aid in investigation of his earlier statements. A witness could not be located and one officer asked defendant if he were really trying to help in locating the witness. Defendant then made a third oral statement confessing to the killing of Julia Collum. He was advised of his rights and taken to the district attorney's office. The two officers proceeded to take a statement when defendant "asked or he mentioned about an attorney * * * and we stopped questioning him and got Mr. Love." Mr. Love, the assistant district attorney, was told that the defendant indicated he wanted an attorney.

Mr. Love then proceeded to question the defendant.

"Q. Do you know what your rights are?

"A. Yes. How long would it take me to get a lawyer, I mean, just for my protection to—it would help me—I want to still tell you the whole story, but to have—have one, you know, present?"

The prosecutor then advised the defendant of his rights and right to counsel, and defendant answered, "Well, like I was telling him, if I say something that, maybe when they appoint me one, he says, 'Well, you ought to have a lawyer present.' I mean, he might ask me that."

Numerous other times defendant gave an indication of wanting a lawyer but each time the prosecutor, by indirection, talked the defendant out of asking for counsel. Defendant never made the direct statement, "I want a lawyer." The prosecutor, however, never accepted any of the defendant's strong indications of wanting a lawyer, but indicated the only way defendant could have a lawyer would be to say, "I want a lawyer." The prosecutor did tell defendant:

"We are not going to get you one this afternoon, because we have no authority or power to do so, but I want to make it clear to you, so that I am being fair with you, Mr. Word—"

After the foregoing, defendant gave a fourth statement in writing confessing to the shooting of Julia Collum.

Defendant, by pre-trial motion and objections during trial, attempted to suppress all statements since an attorney was not appointed when he indicated his desire for counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L. R.3rd 974 (1966); see Frazier v. Cupp, Warden, 394 U.S. 731, 89 S.Ct. 1420, 22 L. Ed.2d 684, decided April 22, 1969. On oral argument defendant conceded that his first two statements were not prejudicial, thus, we only concern ourselves with the third and fourth statements.

Was the use of the third statement under the circumstances a violation of defendant's constitutional privilege against self-incrimination or any other constitutional right? We think not.

The remarks of defendant were not a product of custodial interrogation. They were made in response to the officer's query of defendant's purported assistance in locating a witness. Defendant was not being held under a charge of murder. Defendant's confession was totally unsolicited. We see nothing here which even suggests the application of Miranda. State v. Smith, 80 N.M. 126, 452 P.2d 195 (Ct.App. 1969).

The fourth statement, however, was the product of a custodial interrogation. The record is clear that defendant indicated on several occasions that he would like an attorney to be present. None was provided.

The language of Miranda v. Arizona, supra, is clear:

"* * * [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * * Prior to any questioning, the person must be warned that he has a right to remain silent, that

any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. *If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.* Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him. The mere fact that he may have answered some questions or volunteered some statements on his own does not deprive him of the right to refrain from answering any further inquiries until he has consulted with an attorney and thereafter consents to be questioned." (Emphasis added).

The law officers cannot avoid this directive nor should they attempt, by direction or indirection, to dissuade a defendant from consulting an attorney. The fact that an attorney cannot be immediately found or that defendant would have to wait before an attorney could be appointed cannot be used as an excuse for further questioning.

Since the conviction was based, in whole or in part, on the fourth statement the case must be reversed.

Defendant by pre-trial motion and by motion during the trial sought a hearing to determine the voluntariness of the third and fourth statements. No hearings were held. This was error.

Defendant has the constitutional right at some stage in the proceeding to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness; a determination uninfluenced by the truth or falsity of the confession. State v. Ortega, 77 N.M. 7, 419 P.2d 219 (1966); Pece v. Cox, 74 N.M. 591, 396 P.2d 422 (1964); see Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3rd 1205 (1964).

When a defendant makes it known he has something to say touching the integrity of a claimed confession, however incredible as it may appear to the trial court, the defendant must be heard. The trial judge has no choice.

The judgment is reversed and the cause is remanded with directions to grant defendant a new trial in a manner not inconsistent herewith.

It is so ordered.

SPIESS, C. J., and WOOD, J., concur.