577 P.2d 894

STATE of New Mexico,
Plaintiff-Appellee,

v.

Gary Wayne AUSTIN,
Defendant-Appellant.

No. 3366.

Court of Appeals of New Mexico.

April 4, 1978.

Bruce Lowenhaupt, Las Cruces, for defendant-appellant.

Toney Anaya, Atty. Gen., Robert G. Sloan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

This interlocutory appeal involves the admissibility of defendant's second and third inculpatory statements after the first such statement was ruled inadmissible because obtained by improper inducement. We discuss: (1) fruit of the poisoned tree; (2) burden of the evidence and quantum of proof; and (3) sufficiency of the evidence.

### Fruit of the Poisoned Tree

The statements pertain to an armed robbery in El Paso, Texas. Defendant is charged in New Mexico with receiving stolen property. The allegedly stolen property is $10,000 in cash recovered from a safety deposit box in a bank in Ruidoso, New Mexico. This money was seized under the authority of a search warrant. The affidavit for the search warrant utilized, as probable cause, statements made by defendant to El Paso police officers. If these statements were improperly obtained, the probable cause stated in the affidavit was "fruit of the poisoned tree" and defendant's motion to suppress both the statements and the money should have been granted. See *Carter v. State*, 274 Md. 411, 337 A.2d 415 (1975).

### Burden of the Evidence and Quantum of Proof

The first inculpatory statement was made to Armes, a private detective. The trial court ruled that defendant's statement to Armes was not of his own free will, but was obtained as a result of improper inducement by Armes. The propriety of this ruling is not challenged and is not before us for review. *State v. Chaves*, 27 N.M. 504, 202 P. 694 (1921); see *Hudson v. State*, 89 N.M. 759, 557 P.2d 1108 (1976), cert. denied, 431 U.S. 924, 97 S.Ct. 2198, 53 L.Ed.2d 238 (1977).

The State had the burden of proving the second and third inculpatory statements were voluntary. To do this, the State had the burden of introducing evidence which made a prima facie case of voluntariness. The defendant then had the right to introduce evidence that the statements were involuntary. *State v. Armijo*, 64 N.M. 431, 329 P.2d 785 (1958); see *State v. Turnbow*, 67 N.M. 241, 354 P.2d 533, 89 A.L.R.2d 461 (1960); *State v. Watson*, 82 N.M. 769, 487 P.2d 197 (Ct.App.1971). The burden discussed in this paragraph is the burden of going forward with evidence. This burden applies to all of defendant's inculpatory statements. We refer to the trial court's findings as to this burden in discussing the sufficiency of the evidence.

The State also had the burden of persuading the trial court that the inculpatory statements were voluntary. What was the quantum of proof required? The quantum was a preponderance of the evidence, but not proof beyond a reasonable doubt, which showed that the statements were voluntary. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *United States v. Davis*, 456 F.2d 1192 (10th Cir. 1972). *State v. Lord*, 42 N.M. 638, 84 P.2d 80 (1938) seems to apply the preponderance of the evidence standard inasmuch as the opinion states "there was some evidence to support the court's conclusion". *Lego v. Twomey*, supra, points out that the states are free to adopt a standard higher than a preponderance of the evidence. We have found no New Mexico decisions applying a higher standard. Inasmuch as a "preponderance of the evidence" is constitutionally valid, we hold that standard is the quantum of proof required in cases of inculpatory statements where there is no prior taint.

In this case there was a prior taint; the inculpatory statement to Armes was excluded because of improper inducement. *State v. Chaves*, supra, states that "if a

confession has been made under circumstances rendering it involuntary, a presumption exists that a second confession is the result of the prior influence, and this must be overcome before the second becomes admissible."

*State v. Dickson*, 82 N.M. 408, 482 P.2d 916 (Ct.App.1971) states:

Applying *Chaves* to this case, the later incriminating statement may not be used unless it is established that the later statement was not the exploitation of the earlier illegally obtained incriminating statements, and unless the later statement was obtained under circumstances sufficiently distinguishing to purge it from the taint of the earlier illegal statements. . . . Specifically, in the circumstances of this case, defendant's later statement was presumptively inadmissible, and the State had the burden of establishing its admissibility.

■ Applying *Chaves*, supra, and *Dickson*, supra, in persuading the trial court as to the voluntariness of the second and third inculpatory statements, the State had to overcome the presumption that those statements resulted from the first statement. In meeting this burden the State had to show the later statements were not the exploitation of the first statement and that the later statements were obtained under circumstances sufficiently distinguishing to purge them from the taint of the first statement.

What is the quantum of proof required to overcome the presumption of inadmissibility?

*Bunting v. Commonwealth*, 208 Va. 309, 157 S.E.2d 204 (1967) cited in *State v. Dickson*, supra, required "clear and substantial proof". *State v. Lekas*, 201 Kan. 579, 442 P.2d 11 (1968) required evidence which "convincingly demonstrates the absence of connection with the prior illegal confession." *Thompson v. The Commonwealth*, 61 Va. (20 Gratt.) 724 (1870) required "strong and clear" evidence. Other jurisdictions have required "clear" evidence. *Payne v. State*, 231 Ark. 727, 332 S.W.2d 233 (1960); *McNish v. State*, 45 Fla. 83, 34 So. 219

(1903); *Lyons v. State*, 77 Okl.Cr. 197, 138 P.2d 142 (1943), affirmed, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944). Compare the "heavy burden" upon the State in attempting to show a waiver of the right to counsel once that right has been effectively invoked, *State v. Greene*, N.M., 572 P.2d 935 (1977).

We do not decide whether the proof to overcome the presumption must be greater than a preponderance. We need not do so because the proof in this case does not amount to a preponderance of the evidence.

### Sufficiency of the Evidence

The trial court found that the State made a prima facie case that defendant's statements to El Paso police officers were voluntary. We assume this finding is correct. The trial court also found "the Defendant had the burden of going forward with evidence rebutting the *prima facie* showing, which burden Defendant did not carry". This finding is incorrect. The trial court also found that "[a]ny taint, inducement or involuntariness which may have been involved in the Defendant's statements to Jay J. Armes was removed". This finding is incorrect. .

### (a) The second inculpatory statement.

■ Armes "pulled him [defendant] off the road", talked to defendant and took defendant to be viewed by the victim of the robbery. It was 2:00 p.m. when the viewing concluded. Armes then took defendant to lunch, after which defendant admitted the robbery. This was the first inculpatory statement, which was suppressed because of improper inducement by Armes. Armes suggested they go to the police. Defendant did not trust police officers. Armes suggested they go directly to the chief of police, who was an honest man. Defendant agreed. Armes and defendant arrived in the office of the police chief shortly before 3:30 p.m.

Armes told the chief that he had brought defendant in because defendant wished to turn himself in in connection with the rob-

bery. The chief was surprised; the chief advised defendant that he had a right to remain silent and what defendant said might be used against him. Armes recounted the details of the robbery. The chief summoned Officer Gray. When Gray arrived, Armes repeated what he had told the chief about the robbery. "And he [Armes] looked at Mr. Austin and I [Gray] said, Is this correct? And he [defendant] said, Yes. I'm the one you are looking for." This admission is defendant's second inculpatory statement.

The chief testified that defendant was not under restraint or handcuffed at the time, but that it was fairly obvious that defendant was in police custody. The chief also testified that no threats or promises were made to defendant in his presence. This, together with the chief's curtailed advice of rights, is the evidence of voluntariness and the evidence which must be relied on to overcome the presumption that the second statement resulted from the influence of the first statement. Assuming this amounted to a prima facie case, the evidence rebutting such evidence is that defendant had been with Armes for some unspecified time (the inference is in excess of two hours), during which time defendant confessed to Armes as a result of improper inducement by Armes, who immediately brought defendant to the chief's office, where defendant made his second statement after Armes recited the facts.

The fact of police custody and the absence of threats or promises by the police are not circumstances distinguishing the second statement from the taint of the first statement. Why? Because of the time factor; there was no break in the stream of events. See *Beecher v. Alabama*, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967). The curtailed advice of rights does not distinguish the second statement from the taint of the first statement. As stated in *State v. Ascarate*, 21 N.M. 191, 153 P. 1036 (1915), dismissed, 245 U.S. 625, 38 S.Ct. 8, 62 L.Ed. 517 (1917):

[T]he accused may have been warned, and nevertheless the other facts surrounding the confession are such as would lead a reasonable thinking man to believe that the confession was not the result of the untrammeled volition of the person making it, but was induced by other influences.

See also, *State v. Dickson*, supra.

There is an absence of circumstances distinguishing the second statement from the taint of the first statement. The trial court erred in refusing to suppress the second statement.

(b) The third inculpatory statement.

■ After defendant made the inculpatory statement in the chief's office, Gray advised defendant of "the process he would be going through". This advice was that: 1. Defendant would be taken to Gray's office where defendant would be advised of his rights and would be taken before a magistrate who would also advise defendant of his rights. 2. A warrant for defendant's arrest would be issued. 3. At Gray's office, defendant "would be talked to. If he wished to talk to us, we would talk to him." 4. Defendant "would be directly booked." Upon being so advised, defendant had a "very surprised look on his face", turned to Armes and said, "Well, I didn't know I was going to have to go to jail." Armes told defendant to go along with the police because the police "have some paperwork to take care of".

It was a two-minute walk from the chief's office to Gray's office. At Gray's office, defendant's rights were read to him from a card. This was a full advice of rights and defendant indicated he understood them. Defendant asked an officer if the officer thought defendant needed an attorney. The officer told defendant "if I was sitting in your chair, I would want an attorney."

Thereupon, two officers interrogated defendant "no longer than thirty minutes." During this time, defendant confessed to the robbery. This was the third inculpatory statement. After this confession, defendant was taken before a magistrate. After the appearance before the magistrate, the

officers prepared to take a written statement. This was not done because defendant said "he would like to wait for his attorney." The oral confession in Gray's office was the basis for the affidavit on which the search warrant was issued.

Evidence tending to show a prima facie case was: 1. Defendant was warned of his constitutional rights and indicated he understood them. 2. Defendant knew he was going to jail. 3. The third confession was outside the presence of Armes and to officers unconnected with Armes' conduct. 4. Defendant stated that his confession was of his own free will. 5. Gray was of the view that defendant's confession was voluntary. 6. There were no promises or threats from the officers.

Evidence tending to rebut the prima facie case was: 1. When Armes made his "paperwork" remark to defendant in the chief's office, he also told defendant that "everything will be all right" and nothing was said by the chief or Gray to dispel this assurance. 2. The two officers who interrogated defendant in Gray's office were of the view, based on their experience and defendant's conduct, that Armes had promised defendant immunity from prosecution. 3. Detective Pfeil, one of the interrogating officers, testified: "And knowing he had been brought in by Mr. Armes, I asked him if he had been promised anything like the charges against him would be dropped, that no prosecution would take place, and he affirmed that." 4. In addition to defendant's "not go to jail" remark in the chief's office, defendant twice stated during the interrogation in Gray's office that he did not expect to go to jail. 5. Detective Pfeil agreed that at the beginning of the interrogation in Gray's office, defendant felt that he was not supposed to go to jail "but as time progressed, to the time he was taken over there [to jail], I think it became more aware to him he was [going to jail]." 6. Even though the interrogating officers believed defendant was cooperating because of a promise of immunity from Armes, the officers did not tell defendant they could not grant immunity. 7. The third confession occurred during a continuation of the prior events. 8. Defendant was not told that his first statement could not be used against him.

The fact that defendant was advised of his constitutional rights and understood them, and the fact that defendant viewed the third confession as voluntary, does not show the third statement was not the exploitation of the first, illegally obtained statement. *State v. Dickson*, supra. The officers' view that defendant's third statement was voluntary was no more than a conclusion. *State v. Martinez*, 30 N.M. 178, 230 P. 379 (1924). The absence of threats or promises by the interrogating officers is not a circumstance distinguishing the third statement from the illegal first statement. The fact that the third statement was made to officers unconnected with Armes could be a distinguishing circumstance, see *State v. Chaves*, supra, but is not here inasmuch as the officers were aware that defendant was cooperating because of Armes' promise that no prosecution would take place.

The evidence is that defendant was under the influence of Armes' promises at the time the interrogation began in Gray's office and believed he would not be jailed until shortly before he was placed in jail after he confessed. The officers made no effort to separate the confession they received (the third statement) from the illegal statement taken by Armes. *Williams v. United States*, 328 F.2d 669 (5th Cir. 1964); *Lyons v. State*, supra. There is an absence of circumstances distinguishing the third statement from the first statement. The trial court erred in refusing to suppress the third statement and in refusing to suppress the evidence obtained by the search warrant.

The order of the trial court refusing to suppress the second and third inculpatory statements, and in refusing to suppress the money as evidence, is reversed; the cause is remanded for further proceedings. In so holding, we express no opinion as to defendant's request that the money be returned to him. That issue was not briefed on appeal and was not decided by the trial court.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.