599 P.2d 1054
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Rosemary POLLER, Defendant-Appellant.**

No. 3726.

Court of Appeals of New Mexico.

Feb. 6, 1979.

Brian M. Gross, Albuquerque, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Sammy J. G. Quintana, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

OPINION

HENDLEY, Judge:

Convicted of murder in the second degree contrary to § 30–2–1(B), N.M.S.A. 1978, defendant appeals. She asserts one ground for reversal which relates to the refusal of the trial court to suppress certain statements she made to Officer Marable. We affirm.

The sheriff's department received a call of a shooting and officers were dispatched to the area. Officer Gomez was the first on the scene. Defendant approached Gomez and informed him that the victim had stolen Five Hundred Dollars ($500.00) from her and that she had shot him. (First statement.) Gomez testified, "Mrs. Poller stated she did have a weapon and that it was underneath her coat." Gomez then took the gun from defendant. He placed her in the patrol car and "asked her what had happened." Defendant was not given her rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Gomez also stated that once he had placed defendant in the patrol car she was not free to leave although she had not been placed under arrest. While sitting in the patrol car and in response to Gomez's question, defendant stated that she had shot the victim and that the victim had robbed her. (Second statement.)

Defendant was then placed in Officer Marable's vehicle and placed under arrest and for the first time she was advised of her *Miranda* rights. Defendant was asked if she wished to waive her right to be silent. She said she did not wish to talk. Marable did not ask any further questions. Defendant then asked Marable if the victim was dead and he replied that the victim was dead. Marable testified that defendant then started crying and stated that the reason she had shot him was that he had taken money from her. (This and subsequent statements are referred to as the third statements.) Marable also testified defendant talked most of the time that they were at the scene.

Defendant was then taken to the sheriff's office. Defendant was again read her *Miranda* rights from a written form. She signed the form, after reading it, in the presence of witnesses. Defendant did not sign the waiver of rights. Marable stated that defendant kept on talking during this time. Marable, at defendant's request, called an attorney for her. She spoke to the attorney. Defendant then stated she did not want to answer any questions. Marable did not attempt to interrogate her. During this time defendant was spontaneously making comments to Marable.

The trial court found that the first statement and the production of the firearm were not suppressible, but that the second statement made in Gomez's police vehicle was suppressible since she was not given her *Miranda* rights. The trial court then held that the statements made to Marable were "not the result of an exploitation of her prior statement to Officer Gomez."

One of defendant's assertions in the trial court was that defendant was mentally incompetent to make any voluntary statement. The trial court declined to rule on this aspect until further information was supplied by the Court Clinic. This issue was not preserved for appeal since the record does not disclose the court ruling on this issue. Defendant's other assertion in the trial court was that since the second statement was without the benefit of the *Miranda* warnings the State assumes a heavy burden to show that the third statements were not based upon the second statement.

The State must meet its burden of proving that the third statements were free from the taint of the second statement. See *State v. Austin*, 91 N.M. 586, 577 P.2d 894 (Ct.App. 1978); *State v. Greene*, 91 N.M. 207, 572 P.2d 935 (1977). To do this it must overcome the presumption that the third statements were a result of the second statement. See discussion in *State v. Austin*, supra, of *State v. Chaves*, 27 N.M. 504, 202 P. 694 (1921) and *State v. Dickson*, 82 N.M. 408, 482 P.2d 916 (Ct.App. 1971). We need not decide what quantum of proof was required to overcome the presumption of inadmissibility. We will assume the highest quantum. See *State v. Austin*, supra.

The purpose of the rule of presumptive inadmissibility is "[t]he natural concern . . . that an inability to protect the right at one stage of a proceeding may make its invocation useless at a later stage." *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974). Thus, the concern is that a suspect will assume that since she has already made incriminating statements, she may as well continue to talk. This situation normally arises out of instances where the first statement is the incriminating statement obtained without proper warnings or by inducements or threats. See *State v. Chaves*, supra; *State v. Austin*, supra, and *State v. Dickson*, supra.

However, such is not the case here. Defendant's first statement was voluntary and spontaneous. It was a confession of shooting the victim. The second statement, although not much more than a reiteration of the first statement, was nonetheless given in violation of *Miranda*. The third statements were made, not as a result of questioning, but spontaneously by the defendant.

The distinguishing factors in each of the cases which have been reversed is the existence of continued questioning by the authorities after the *Miranda* warning had been given and invoked by the defendant, and during a time period falling within an unbroken "stream of events." See *State v. Word*, 80 N.M. 377, 456 P.2d 210 (Ct.App. 1969). The stream was broken here by removal of the defendant to the second police car after her second statement, and then to the police station where she continued to volunteer information and comments without questioning. As stated in *Greene* ". . . [A]dmission into evidence of volunteered statements is not prohibited by the fifth or fourteenth amendments, where there are no facts to indicate that the statement is made in response to 'interrogation.' . . . Voluntary statements of any type are not barred by the fifth amendment, and their admissibility is not affected by *Miranda v. Arizona* . . . ."

By whatever quantum of proof, the third statements pass muster and were not tainted by the second statement. The third statements did not arise out of questioning. Under the circumstances of this case the third statements were not the exploitation of the second statement. Compare *State v. Dickson*, supra. The State overcame the heavy burden of presumptive inadmissibility. *State v. Greene*, supra.

We hold that the third statements, which were not the result of questioning by Marable, were spontaneous and voluntary. As such, they were properly admissible. To hold otherwise would force the police to gag any suspect who wished to spontaneously talk about the incident.

Affirmed.

IT IS SO ORDERED.

SUTIN, J., concurring in result.

WALTERS, J., concurs.

SUTIN, Judge (concurring in result).

I concur in the result.

Defendant's only contention on appeal as stated in the Docketing Statement is:

. . . Defendant contends that the State failed to meet its burden sufficiently distinguishing the later statements from the earlier to purge them of the taint of the earlier, illegally taken statements.

The earlier illegally taken statements suppressed were:

She stated that she did shoot the victim, and that the victim had robbed her of five hundred dollars. She changed the amount several times, the amount of money that was supposed to have been robbed from her.

Over objection, Marable testified:

[S]omething about he had taken some money from her and she came down there to find him or to get her money back . . . some money had been taken from the house, and that the victim had gone to the address where the shooting occurred to pick up some beer for the party and had been gone for quite some time, that he [victim] had gone down there or was already down there, that *he walked toward her and she fired at him.* [Emphasis added by defendant.] . . . Well, the first time . . . she made two or three different amounts, one time it was five hundred dollars and then I think the next time she mentioned it was four hundred dollars. . . . It was her car or her sister's car, that he had been driving it—she didn't give him the car to go to the above address on Riverside. She went to see if he was down there, or if she could locate the vehicle.

Defendant believes that the "details," inherently untrustworthy because of the condition under which they were adduced, supplied the basis for showing a wilful killing without sufficient provocation (second degree murder).

What defendant does not point out is the testimony of Marable that is tainted by the prior suppressed statements. Marable did not testify that defendant shot the victim. She only fired at him. He did not testify that the victim had robbed her. The only "tainted" testimony was the different amounts of money the victim had taken from her. I think the testimony is sufficiently distinguishable to purge it of the taint of the suppressed statements.

Nevertheless, defendant's contention on appeal applies to only one of a two-pronged test as to the admissibility of "tainted" testimony. A second test is that the later statement was not the exploitation of the earlier illegally obtained incriminating statements.

"To keep the pot a-boiling," I should like to point out that *State v. Dickson*, 82 N.M. 408, 482 P.2d 916 (Ct.App. 1971) and *State v. Austin*, 91 N.M. 586, 577 P.2d 894 (Ct. App. 1978), upon both of which defendant relies, do not establish a proper rule of law. These cases stand for the proposition that:

*Even though a defendant has been given the required warning of his constitutional rights,* the later incriminating statement may not be used unless it is established that the later statement was

not the exploitation of the earlier illegally obtained incriminating statements, *and unless the later statement was obtained under circumstances sufficiently distinguishable to purge it from the taint of the earlier illegal statements.*

The *Dickson—Austin* rule was taken from *Commonwealth v. Banks*, 429 Pa. 53, 239 A.2d 416 (1969). In *Banks*, the rule was adopted "absent a required warning of constitutional rights." [239 A.2d at 419.] Under *Banks*, if the later statement is obtained *after* defendant has been given the *Miranda* warnings, the later statement may be used as evidence if the statement was freely and voluntarily given. If not voluntarily given, the incriminating statement may be inadmissible and insubmissible. *Coyote v. United States*, 380 F.2d 305 (10th Cir. 1967).

Upon arrest of defendant, Marable read the *Miranda* warnings to defendant. Thereafter, he never questioned her. Defendant voluntarily talked all of the time. She was taken to sheriff's headquarters. There Marable read to her the rights from the "Interrogation of Advice of Rights" form. Defendant also read it, understood it, signed it, and, for 30 or 40 minutes, kept talking spontaneously while in the office. She asked Marable to call an attorney. He did. Defendant talked to the attorney and then indicated that she did not want to answer questions. Thereafter, no attempt was made to interrogate her.

Defendant was advised of her constitutional rights to protect her against self-incrimination on two occasions and yet made voluntary statements that were admissible and submissible in evidence. Defendant's claim for a new trial was foreclosed.

Judge Hendley says:

The State must meet its burden of proving that the third statements were free from the taint of the second statement. See *State v. Austin*, 91 N.M. 586, 577 P.2d 894 (Ct.App. 1978); *State v. Greene*, 91 N.M. 207, 572 P.2d 935 (1977).

.   .   .

In *Austin*, Judge Wood said:

The State had the burden of proving the second and third inculpatory statements were voluntary. .   .   .

The State also had *the burden of persuading the trial court* that the inculpatory statements were voluntary. .   .   . [Emphasis added.] [91 N.M. at 587, 577 P.2d at 895.]

What is meant by "persuading the trial court"? Black's Law Dictionary, p. 1301 (4th Ed. 1968) says, "persuade" means:

To induce one by argument, entreaty, or expostulation into a determination, decision, conclusion, belief, or the like .   .   .

The State did "persuade" the trial court that the inculpatory statements were voluntary. Yet, the trial court was reversed. To avoid any misunderstanding, I think Judge Wood intended to say:

The State also had the burden of *persuasion by a preponderance of the evidence*, that the inculpatory statements were voluntary.

In *State v. Santillanes*, 91 N.M. 721, 580 P.2d 489 (Ct.App. 1978), where presumptions were involved and the burden of proof shifted from the defendant to the State, Judge Wood said:

This shifted burden of proof is the burden of persuasion. .   .   . [91 N.M. at 724, 580 P.2d at 492.]

The meaning of the phrase is not explained. The "burden of persuasion" never shifts at any stage of the proceedings. It is the burden of going forward with the evidence that shifts back and forth as the trial progresses. *Ambrose v. Wheatley*, 321 F.Supp. 1220 (D. Del. 1971). See also, *Commonwealth v. Walker*, 370 Mass. 548, 350 N.E.2d 678 (1976); *In re Swan's Estate*, 4 Utah 2d 277, 293 P.2d 682 (1956). The "burden or persuasion" is commonly referred to as the "burden of proof by a preponderance of the evidence." It is the preponderance of the evidence that must make the *trier of the fact* believe the facts asserted by a party. *People v. Valverde*, 246 Cal.App.2d 318, 54 Cal.Rptr. 528 (1967). In *Austin*, the trier of the fact was the trial court because the appeal was interlocutory. On whether the inculpatory statements

were voluntary, the trial court had to be convinced by the State's evidence that the existing facts were in favor of the State who had this burden. See, *Fretz v. Anderson*, 5 Utah 2d 290, 300 P.2d 642 (1956). To me, *Austin* stands for this proposition:

> The State had the burden of proving that the second and third inculpatory statements were voluntary by a preponderance of the evidence.

The trial court so found and this was assumed to be correct. Upon what grounds, then, did Judge Wood reverse the trial court?

(1) The trial court said:

> . . . The defendant had the burden of going forward with evidence rebutting the *prima facie* showing, which burden defendant did not carry.

Judge Wood said: "This finding is incorrect." I disagree. If the prima facie case of the State stands unrebutted, then the inculpatory statements of defendant were voluntary as a matter of law. When the trial court found that defendant's statements were voluntary, the conviction should have been sustained.

(2) The trial court also said:

> . . . Any taint, inducement or involuntariness which may have been involved in the defendant's statements to Jay J. Armes was renewed.

Judge Wood said: "This finding is incorrect." I disagree.

Judge Wood said:

> The fact that defendant was advised of his constitutional rights and understood them, and the fact that defendant viewed the third confession as voluntary, does not show the third statement was not the exploitation of the first, illegally obtained statement. . . .

This quotation is supported by Judge Wood's opinion in *State v. Dickson, supra.* This is not a correct statement of the law. In the event the Supreme Court should agree with the *Dickson—Austin* rule, it is essential to explain what the State's burden is to avoid an "exploitation" of a prior illegally obtained statement. I think it means an injust or improper use of a prior illegally obtained statement. This explanation was set forth in *Bunting v. Commonwealth*, 208 Va. 309, 157 S.E.2d 204 (1967) cited in *Dickson*. The court said:

> The influences which induced the original confession made by defendant to detective Allen are presumed to have continued when the subsequent confession was made to detective Fitzsimons in the absence of evidence to the contrary. . . . The narrative of the evidence does not show that defendant was advised that any statement made to Fitzsimons must be made freely and voluntarily on his part, *without any promise of reward*, and that what he said could and probably would be used against him at his trial. [A *Miranda* warning.] *Nor can it even be inferred from the circumstances surrounding the confession made to Fitzsimons that defendant's mind was free of the earlier influences which induced the involuntary written confession.* [Emphasis added.] [157 S.E.2d at 207.]

These requirements exceed the *Miranda* warnings. In addition to the *Miranda* warnings, the State must prove that the police officer did not promise or reward defendant, and that defendant's mind was free of earlier influences.

In the instant case, these requirements were not met. Under the *Dickson—Austin* rule, if properly raised, defendant is entitled to a new trial. The third statements were an exploitation of the second illegally obtained statement, even though voluntarily made.

Judge Hendley states that "The trial court then held that the statements made to Marable were 'not the result of an exploitation of her prior statement to Officer Gomez.'" This was not an issue in the case. Nevertheless, the trial court did not state in its Order the facts found and the conclusions reached for its denial of defendant's motion to suppress statements made by defendant to Marable. This was done by letter to both counsel. In my opinion, inasmuch as this procedure appears to be a common practice, the letter and the Order

262

can be read together as one instrument. However, the trial court did not make such findings that supported the conclusion reached. Based upon this fact, if properly raised, defendant was entitled to a new trial.

The State's response is that the admission of Marable's testimony resides within the sound exercise of discretion by the trial court and there was not abuse of discretion. This point is of some importance. However, the State escaped from the *Dickson—Austin rule* by silence. This convinces me the State agrees that the *Dickson—Austin rule* applies and sustains defendant's contention on appeal. Under this rule, the admission of "tainted" testimony would be an abuse of discretion because it would deny the defendant a fair trial. The trial court would act beyond the bounds of reason unless an effective reason was given for admitting the evidence—such as, this testimony is not "tainted."