166 P.3d 1106 (2007)
2007-NMCA-113
STATE of New Mexico, Plaintiff-Appellant,
v.
Roger SNELL, Defendant-Appellee.
No. 26,655.
Court of Appeals of New Mexico.
June 13, 2007.
Certiorari Granted August 8, 2007.
*1108 Gary K. King, Attorney General, Santa Fe, NM, Steven S. Suttle, Assistant Attorney General, Albuquerque, NM, for Appellant.
Kamm & McConnell, L.L.C., Steven L. McConnell, Raton, NM, for Appellee.

OPINION
FRY, Judge.
{1} The State appeals from an order suppressing two sets of statements Defendant made to the police during an investigation of a car accident involving Defendant and another motorist. Defendant made the first statements while being questioned in the back seat of a police vehicle. He made the second statements later that evening when a police officer telephoned Defendant in his hotel room. The trial court suppressed the first statements on the basis that they were made while Defendant was in custody and had not been informed of his rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court also suppressed the second set of statements, which Defendant argued were both custodial and, regardless of custody, presumptively inadmissible and involuntary as a tainted product of the earlier Miranda violation.
{2} We affirm the suppression of the statements Defendant made in the back of the police car, because we conclude that under the facts presented in this case, Defendant was in custody. We also affirm the suppression of the statements Defendant made in his hotel room because the State failed to preserve its argument that they were voluntarily made and not otherwise tainted by the prior Miranda violation.
BACKGROUND
{3} Defendant was involved in a head-on collision with another vehicle on the highway. The accident happened on a snowy evening in March, and the road was slick and covered with ice. A witness stated that she saw Defendant's pickup truck move out of his traffic lane into a lane of oncoming traffic and strike a vehicle head on. The driver of that vehicle suffered severe injuries and died shortly after she was taken to a hospital. Defendant was charged with homicide by vehicle, contrary to NMSA 1978, § 66-8-101(C) (2004). The criminal complaint alleged that he operated a motor vehicle while *1109 under the influence of intoxicating liquor and/or drugs, or in the alternative that he operated his vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others.
{4} When the police arrived at the scene. Officer Eric Jones began to question the witness. Defendant interjected, asking if the witness had seen the other driver move out of her lane and into Defendant's. Defendant's question appeared to be calculated to persuade the witness and the police that Defendant was not at fault. Officer Jones ordered Defendant to leave. Officer Alan Apodaca physically escorted Defendant away, and told Defendant that he would be arrested for obstruction if he kept talking to the witness. Officer Apodaca brought Defendant to Officer Jones's police vehicle, placed him in the back seat with the doors closed and locked, and left him there. After Officer Jones finished speaking with the witness, he went to his police car and questioned Defendant about the accident. During that first set of questions, Defendant stated that he was going between sixty and sixty-five miles an hour when the accident occurred.
{5} Because Defendant's vehicle was disabled and he was traveling from out of town, the police arranged for Defendant to be taken to a hotel. Later that evening, Officer Jones called Defendant on the telephone to ask him a second set of questions about the accident. This time, Defendant said he did not remember how fast he was going and attempted to retract his prior statement that his speed was sixty to sixty-five miles an hour.
{6} Defendant filed a motion to suppress his first statements on the ground that they were the product of custodial interrogation that required the police to inform him of his Miranda rights. He moved to suppress the second statements on two grounds: first, as the product of custodial interrogation and, second, as statements that were presumptively inadmissible due to the taint of the earlier, unwarned statements. A hearing was held on Defendant's motion, at which both parties introduced evidence as to the circumstances surrounding Defendant's first statements. There was some uncertainty as to whether Officer Jones opened the door and stood outside the vehicle to interrogate Defendant, sat in the front of the vehicle and questioned Defendant as he was seated in the back, or had Defendant get out of the vehicle. But the trial court found that Defendant was seated in the back of the vehicle while he was questioned, and concluded that a reasonable person who had been threatened with arrest and then placed in the back seat of a police car and interrogated would not feel free to leave. The trial court granted the Defendant's motion to suppress as to both the first and second sets of statements. No evidence was introduced at the hearing about the second statements, and neither party argued the merits of suppressing those statements. The State appeals the trial court's order granting the motion pursuant to NMSA 1978, § 39-3-3(B)(2) (1972) and Rule 12-201(A)(1) NMRA.
DISCUSSION
{7} The standard of review for a suppression ruling is whether the trial court correctly applied the law to the facts when the facts are viewed in the light most favorable to the prevailing party. State v. Harbison, 2007-NMSC-016, ¶ 8, 141 N.M. 392, 156 P.3d 30. Under this standard, the trial court's factual determinations are subject to a substantial evidence standard of review, and its application of the law to the facts is subject to de novo review. Id. "Determining whether or not a police interview constitutes a custodial interrogation requires the application of law to the facts." State v. Nieto, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442. We therefore review that determination de novo. Id.
{8} The Fifth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, see Malloy v. Hogan, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), secures a criminal defendant's right not to incriminate himself. Article II, section 15 of the New Mexico Constitution provides an analogous protection. Although Defendant argues that he is entitled to a state constitutional analysis based on the interstitial approach described in State v. Gomez, 1997-NMSC-006, 122 N.M. 777, 932 P.2d 1, Defendant failed to *1110 preserve his state constitutional claim below. In the trial court, Defendant did not argue that our state constitution provides greater protection than the federal constitution. See id. ¶ 23 (explaining that when a party asserts a state constitutional right that has not been interpreted differently than its federal analog, the party must assert in the trial court the reasons why the New Mexico constitutional provision should be interpreted more broadly than its federal counterpart). Therefore, we will limit our analysis to the rights provided by the Fifth and Fourteenth Amendments to the United States Constitution.
{9} The Fifth Amendment provides that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To ensure that a person suspected of a crime does not feel compelled to make statements to the police, the United States Supreme Court in Miranda, 384 U.S. at 444, 86 S.Ct. 1602, held that prior to custodial interrogation, a person "must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." If a person is not informed of these rights, his unwarned statements cannot be used against him as substantive evidence at trial. See id.
{10} However, Miranda warnings are only necessary if a defendant is in police custody at the time of the interrogation; they are not required for non-custodial interrogations. See Nieto, 2000-NMSC-031, ¶ 20, 129 N.M. 688, 12 P.3d 442 (explaining that Miranda applies only when a person is in custody). Whether an interrogation is custodial depends on all of the surrounding circumstances, but the "ultimate inquiry" is whether there was a "restraint on freedom of movement of the degree associated with a formal arrest." Id. (quoting Stansbury v. California, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam)). A suspect is in custody for the purpose of Miranda if a reasonable person in his position would believe he was not free to leave the scene of the interrogation. State v. Munoz, 1998-NMSC-048, ¶ 40, 126 N.M. 535, 972 P.2d 847. Some of the factors relevant to whether a reasonable person would believe he was free to leave include "the purpose, place, and length of interrogation," along with "the extent to which the defendant is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the degree of pressure applied to the defendant." Id. (internal quotation marks and citation omitted). "The test is objective: the actual subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." Id. (internal quotation marks and citation omitted).
The Custodial Interrogation in the Police Car.
{11} The trial court concluded that Defendant was in custody when he was questioned in the back seat of a police car. We agree that under the circumstances of this case, such questioning constituted custodial interrogation that triggered Defendant's constitutional right to receive Miranda warnings. Because the police did not advise Defendant of his rights before questioning him, the trial court properly suppressed the statements Defendant made during that interrogation.
{12} The State argues that Defendant was not entitled to Miranda warnings since his detention was part of a routine traffic investigation. In Miranda, the Supreme Court noted that its holding was not intended to implicate "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." 384 U.S. at 477, 86 S.Ct. 1602. Subsequently, in Berkemer v. McCarty, 468 U.S. 420, 436-40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Court held that Miranda warnings are generally not required when a defendant is subjected to roadside questioning during a routine traffic stop. While the fact that a defendant is not typically free to leave during a traffic stop means that his detention constitutes a seizure for Fourth Amendment purposes, id. at 436-37, 86 S.Ct. 1602 investigatory detentions such as traffic stops "do not implicate the Fifth Amendment in the same way as *1111 custodial interrogations" since investigatory detentions "are generally public, temporary, and substantially less coercive than custodial interrogations," State v. Javier M., 2001-NMSC-030, ¶ 19, 131 N.M. 1, 33 P.3d 1.
{13} The essential difference, for Miranda purposes, between a traffic stop and a custodial interrogation is that a reasonable motorist detained during a traffic stop believes that his detention will be brief and open to public view.
When a motorist is pulled over for a traffic stop, the motorist is subject only to an investigatory detention because the stop is presumptively temporary and brief. The motorist expects that he will only be obliged to spend a short period of time answering questions and then be allowed to continue on his way. The temporariness of such a stop is different from a station house interrogation which is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek. Moreover, a traffic stop is typically public and therefore reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements. Because the atmosphere surrounding such investigatory detentions is not so inherently coercive that the detainee feels compelled to speak, persons temporarily detained pursuant to such stops are not in custody for the purposes of Miranda.

Javier M., 2001-NMSC-030, ¶ 19, 131 N.M. 1, 33 P.3d 1. (internal quotation marks and citations omitted); see also Armijo v. State Through Transp. Dep't, 105 N.M. 771, 773, 737 P.2d 552, 554 (Ct.App.1987) ("Generally, custodial interrogation does not occur at a traffic stop based upon: (1) the routineness of the questions[,] (2) the generally brief detention[,] and (3) the fact that such stops are in the public view." (internal quotation marks and citations omitted)).
{14} However, this is not a bright-line rule applying to all traffic investigations, and if a "`motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him `in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda.'" Armijo, 105 N.M. at 774, 737 P.2d at 555 (quoting Berkemer, 468 U.S. at 440, 104 S.Ct. 3138). The essential question is whether the detention "exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." Berkemer, 468 U.S. at 437, 104 S.Ct. 3138. The conduct of the police in this case in threatening Defendant with arrest, physically escorting him to the police car, placing him in the back seat, where he was locked in, leaving him there, and then returning to question him either from the front seat of the vehicle while he was locked in the back, or opening the back door and questioning him from a position that would have blocked his exit from the vehicle, exerted just the sort of pressure to which Berkemer refers.
{15} We disagree with the State that this case is like the traffic investigation in State v. Greyeyes, 105 N.M. 549, 734 P.2d 789 (Ct. App.1987). In Greyeyes, an officer was called to the scene of a one-vehicle accident. Id. at 550, 734 P.2d at 790. When he arrived, he saw two men standing outside of a damaged truck by the side of the road. Id. The officer asked who owned the truck, who had been driving at the time of the accident, and how the accident occurred. Id. As the defendant was answering these questions, the officer noticed the smell of alcohol on his breath and asked if he had been drinking. Id. The defendant admitted that he had. Id. This Court held that under those circumstances, the defendant was not in custody for purposes of Miranda. Greyeyes, 105 N.M. at 551, 734 P.2d at 791.
{16} The factual differences between Greyeyes and this case demand a different result. At no point was the defendant in Greyeyes ever physically restrained or provided with any indication that the questioning would be anything other than a brief, on-the-scene investigation. The defendant in Greyeyes was at all times standing out on the open road. In contrast, in this case, the threat that Defendant would be arrested, combined with his subsequent placement in a *1112 locked police vehicle, meant that he was no longer subject to a simple investigatory traffic stop. Defendant's confinement in the circumstances of this case constituted a detention that implicated Defendant's Fifth Amendment rights.
{17} We recognize that our Supreme Court has held that the bare fact that a defendant is questioned while in a police vehicle is in itself insufficient to constitute a custodial interrogation. Munoz, 1998-NMSC-048, ¶¶ 42-43, 126 N.M. 535, 972 P.2d 847. However, because here there are additional factors that would have caused a reasonable person in Defendant's position to believe that he was not free to leave, we conclude that this case is distinguishable from Munoz.
{18} In Munoz, two FBI agents went to the defendant's home and told him they wanted to speak with him about the death of a local man. Id. ¶ 3. The agents explained that they wanted to talk to the defendant away from his home and asked him to come with them. Id. Before the defendant got in the agents' car, the agents explained that the defendant was not required to go with them, that he did not have to talk to them, that he was not under arrest, that he would be free to leave at any time, and that they would bring him back to his home after the interview. Id. ¶ 5. The defendant consented to the interview and got in the car. Id. ¶¶ 5-6. The agents drove to an empty parking lot a short distance from the defendant's home and questioned him. Id. ¶¶ 6-7. The defendant confessed to the murder. Id. ¶ 11. At trial, he sought to suppress the confession because the agents did not inform him of his Miranda rights prior to the interrogation. Munoz, 1998-NMSC-048, ¶¶ 16, 39, 126 N.M. 535, 972 P.2d 847.
{19} Our Supreme Court held that the defendant was not in custody for the purposes of Miranda. Munoz, 1998-NMSC-048, ¶ 43, 126 N.M. 535, 972 P.2d 847. The Court noted that although the fact that the questioning took place in a police car might ordinarily lead to the conclusion that it was custodial, id. ¶ 42, several facts indicated that the defendant's freedom of movement was not restrained in a manner associated with a formal arrest. Id. ¶ 43. These included the fact that (1) the agents told the defendant that he was not under arrest, (2) they explained that he was not under any obligation to speak with them or answer their questions. (3) the agents told the defendant he could leave at any time, (4) the agents told the defendant they would take him back home after they were finished talking, (5) the agents did not handcuff the defendant, (6) the agents did not search the defendant, (7) there was no indication that the car doors were locked during the interrogation or that the defendant was otherwise prevented from leaving, (8) the interview was conducted in a public parking lot that was readily visible from a nearby thoroughfare, (9) the interview was conducted during daylight hours, and (10) after the interview was completed, the agents took the defendant home. Id.
{20} Most significant to Munoz's conclusion that the questioning in the police vehicle was not custodial were those facts indicating that the defendant's presence in the vehicle was entirely voluntary. See id. ¶ 44 (relying on cases in which a defendant consented to accompany the police to the police station). In this case, however, the police did not invite Defendant to join them or make clear that the confinement in their car was at his discretion. Rather, the trial court found that Defendant was threatened with arrest, physically escorted to the police vehicle, placed in the back seat, and instructed to remain there. At the hearing, Officer Jones admitted that when Defendant was confined to the back seat until the officer finished interviewing the witness, the doors would have been locked and Defendant would have been unable to leave. Whether Officer Jones questioned Defendant from the front of the police vehicle while Defendant was locked in the back, or while Jones was standing outside of the opened back door, blocking Defendant's exit from the vehicle, the facts of this case indicate that the interaction between the police and Defendant, unlike the interaction in Munoz, was characterized by a show of force that would have made any reasonable person believe that he was not free to leave.
{21} Furthermore, unlike in Munoz, where the interview took place during daylight *1113 hours in an area that was clearly visible to passers-by, here, the questioning took place after darkness had fallen and in the midst of a snowstorm that would have impaired visibility. Although we do not agree with Defendant's claim that the fact that it was snowing rendered him in custody since the road conditions would have made it more difficult to leave the scene, we do note that the snow, combined with the darkness, would have made it much less likely that people driving down the road would be able to see what was taking place in the police car. This combination of circumstances sufficiently distinguishes this case from Munoz.
{22} The State argues that the accident and the snow storm, and not the conduct of the police, were the reason that Defendant was confined to the back seat of the police vehicle. The trial court, however, found otherwise, and there is substantial evidence in the record supporting that finding.
The State Failed to Preserve Any Argument on the Voluntariness of Defendant's Statements in the Hotel Room.
{23} Defendant moved to suppress his second set of statements, made when the police telephoned him in his hotel room, on two grounds: first, that the statements were unwarned custodial statements, and second, that regardless of whether they were custodial, they were tainted by Defendant's earlier unwarned statements. In a cursory response to Defendant's motion, the State asserted that Defendant's statements were not the product of custodial interrogation; however, the State did not respond in any way to Defendant's claim, based on State v. Poller, 93 N.M. 257, 599 P.2d 1054 (Ct.App.1979), that if Defendant's first statements were taken in violation of his constitutional rights, any subsequent statements were presumed involuntary and the burden shifted to the State to prove that the subsequent statements were not tainted by the first ones. Although the State now claims that the trial court never reached the question of whether the second set of statements should be suppressed, the State is incorrect. Defendant's written motion sought suppression of both sets of statements, and the trial court granted the motion.
{24} On appeal, Defendant abandons his argument that he was in custody when the officer called him on the phone in his hotel room. Instead, he relies on the argument that the Miranda violation as to the statements he made in the police car tainted the statements he later made in the hotel room, making them presumptively involuntary and therefore inadmissible. The State includes one sentence in its brief on appeal suggesting that Defendant's second statements were voluntary. However, the State did not preserve this argument below.
{25} In the trial court, the only arguable basis for preservation of this issue was the State's assertion in its response that "[t]he State vehemently disagrees with [D]efendant's arguments and interpretation of the law applicable to the issues addressed in [D]efendant's [m]otion." Such a blanket statement of general disagreement is inadequate to preserve any argument the State might have made that Defendant's statements were in fact voluntary or that the cases Defendant cited do not correctly state the applicable law as to the effect of an earlier Miranda violation on the admissibility of a later statement. See Rule 12-216 NMRA; Sedillo v. N.M. Dep't of Pub. Safety, 2007-NMCA-002, ¶ 22, 140 N.M. 858, 149 P.3d 955 ("In order to preserve an issue for appeal, the issue must have been raised before the trial court such that it appears that the appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (alterations in original, internal quotation marks and citation omitted)), cert. granted, 2007-NMCERT-001, 141 N.M. 164, 152 P.3d 151. Because the State failed to preserve its argument, we affirm the trial court's order suppressing the statements Defendant made when the police phoned him in his hotel room.
CONCLUSION
{26} We hold that Defendant was in custody when he was questioned in the back of the police vehicle at the scene of the accident. Therefore, he was entitled to Miranda warnings before that questioning occurred. The State failed to preserve any error in the trial *1114 court's suppression of the second set of statements Defendant made on the phone in his hotel room. As a consequence, we affirm the suppression of both sets of statements made by Defendant after the accident and remand for further proceedings consistent with this opinion.
{27} IT IS SO ORDERED.
WE CONCUR: A. JOSEPH ALARID and MICHAEL D. BUSTAMANTE, Judges.