This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.               **NO. 30,438**

**MARY ESTHER LOVATO,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

D. Eric Hannum
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**CASTILLO, Chief Judge.**

This is Defendant's second appeal in this case. Defendant was tried and convicted of criminal sexual penetration of her adolescent granddaughter, D.L., and related offenses. In her first appeal, Defendant made one claim—that her counsel was ineffective. In an unpublished opinion, we held that she had made a prima facie case of ineffective assistance of counsel sufficient to require an evidentiary hearing. *State v. Lovato*, No. 28,910, 2009 WL 6763582, at *2-3 (N.M. Ct. App. Mar. 12, 2009). We then remanded the matter to the district court for a hearing to "clarify the facts surrounding [the d]efendant's claim" and to "issue a definitive determination as to prejudice." *Id.* at *2. Based on the testimony presented at this hearing, the district court found that Defendant had not been prejudiced and concluded that her counsel's "actions or inactions did not render the trial unfair or the verdict suspect." In the present appeal, Defendant claims the district court erred in denying her claim of ineffective assistance of counsel. We affirm the determination of the district court.

**BACKGROUND**

To evaluate Defendant's current appeal, we begin with a short summary of what occurred at trial and at the evidentiary hearing. At trial, the State presented evidence showing that Defendant had sexually molested D.L. regularly between the ages of four and eight years old and had forced and encouraged D.L.'s use of illicit drugs. Specifically, D.L. testified that on different occasions Defendant had digitally

2

penetrated her vagina and anal cavity, placed her tongue in D.L.'s vagina, placed drugs inside D.L.'s vagina, sucked and bit D.L.'s nipples and breasts, forced D.L. to suck on Defendant's breasts, and attempted to force D.L. to touch Defendant's vagina. D.L. also testified that Defendant forced her female cousin, M.B., to endure similar sexual trauma. In addition to the sexual acts themselves, D.L. testified that Defendant lured and trapped her in Defendant's bedroom to molest her and threatened to kill D.L., her mother, and her sister if she ever revealed the abuse. D.L. also testified that Defendant had encouraged illicit drug abuse by using drugs openly in D.L.'s presence, blowing drug-laced smoke into D.L.'s face, having D.L. accompany Defendant on drug runs, forcing D.L. to process drugs for consumption, and attempting to force D.L. to use illicit drugs through an injection needle.

To corroborate and support D.L.'s testimony, the State called Denise Lovato —D.L.'s mother (Mother), Florencia Griego—D.L.'s maternal grandmother (Grandmother), Detective Ginger Walker of the Bernalillo County Sheriff's Department, Senior Social Worker Elizabeth Dupassage of the Children, Youth, and Families Department, and Dr. Rene Ornelas—D.L.'s treating physician and expert of child sexual abuse.

Defense counsel (Counsel) challenged each of the State's witnesses on cross-examination and called M.B. as a defense witness. Counsel revealed through cross-

examination that D.L. had been previously abused by another individual, refuting the inference that D.L.'s knowledge of sexual acts could only have been derived from Defendant. Counsel further revealed through cross-examination that CYFD found D.L.'s previous claim of sexual abuse unsubstantiated. Counsel attacked each lay witness's credibility by revealing discrepancies between the testimonies of D.L., Mother, and Grandmother. Counsel also attacked the motives of Mother and Grandmother and suggested that they had conspired and coached D.L. to incriminate Defendant because they disliked her. Finally, counsel called M.B., D.L.'s female cousin who was also left in Defendant's care, to show D.L.'s story was inconsistent with M.B.'s account. M.B. testified that she was with D.L. and Defendant many times and had never witnessed or experienced any sexual or drug abuse, despite D.L.'s claims that M.B. was present during the abuse and was herself abused alongside D.L. Counsel corroborated M.B.'s testimony with Dupassage's admission that CYFD was unable to substantiate any abuse of M.B., contrary to D.L.'s claims that Defendant had abused both of the girls contemporaneously.

The jury convicted Defendant of criminal sexual penetration in the first degree, attempt to commit criminal sexual penetration, kidnaping, criminal sexual contact (with a child under 13), bribery of a witness, and contributing to the delinquency of a minor. As noted above, Defendant appealed, and the case was remanded for an

evidentiary hearing.

At the hearing, there were two witnesses: Dr. Ornelas and Counsel. Dr. Ornelas was questioned about her opinion at trial and whether her opinion would have changed had she had additional information about D.L.'s previous abuse. She stated that her opinion would not have changed. Counsel explained his trial tactics. He stated that his primary strategy was to show that D.L.'s allegations were fabricated as part of a type of family feud. In this regard, he pointed to M.B.'s recantation of the same abuse, CYFD's inconsistent findings and processing of the two girls, D.L's previous sexual abuse allegation that was unsubstantiated by CYFD, and the general disdain for Defendant held by Mother and Grandmother. He also explained that because he did not want the jurors to "think . . . [he was] trying to hide something[,]" it was his practice to forego valid objections when "it [did not] make a material, substantial impact, or [was] consistent with . . . [my] theory of the case."

After the hearing, the parties filed briefs on the issue. The district court determined that Counsel had made a professional error by not seeking a Rule 11-413 NMRA hearing before the deposition of Dr. Ornelas, but it also determined that there was no prejudice. Additionally, the district court found that Counsel's handling of the case was based on a plausible trial strategy and concluded that there was no ineffective assistance of counsel demonstrated in this case.

**DISCUSSION**

Ineffective assistance of counsel is a doctrine rooted in constitutional law. *See Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032 ("The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees not only the right to counsel but the right to the effective assistance of counsel." (internal quotation marks and citation omitted)). Although this is the first time this Court will review a claim of ineffective assistance of counsel after remand to the district court for an evidentiary hearing, we look to New Mexico case law to establish the standard of review. Matters of constitutional concern are reviewed de novo. *See State v. DeGraff*, 2006-NMSC-011, ¶ 6, 139 N.M. 211, 131 P.3d 61 ("[The defendant's] arguments primarily raise questions of constitutional law, which we review de novo."). Whether a given ineffective assistance of counsel claim has merit, however, is a factually dependent inquiry. Matters of factual concern are reviewed for substantial evidence. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 ("We . . . defer to the district court's findings of fact if substantial evidence exists to support those findings."). Accordingly, Defendant's ineffective assistance of counsel claim presents us with a mixed question of fact and law. *Accord Duncan v. Kerby*, 115 N.M. 344, 347-48, 851 P.2d 466, 469-70 (1993). "Under this standard, the [district] court's factual

6

determinations are subject to a substantial evidence standard of review, and its application of the law to the facts is subject to de novo review." *State v. Snell*, 2007-NMCA-113, ¶ 7, 142 N.M. 452, 166 P.3d 1106. This is consistent with the standard of review utilized by the Supreme Court in habeas petitions under Rule 5-802 NMRA. *Duncan*, 115 N.M. at 347-48, 851 P.2d at 469-70.

Our courts look to the United States Supreme Court's two-pronged test for ineffective assistance of counsel as outlined in *Strickland v. Washington*, 466 U.S. 668, 690, 692, 694 (1984). *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. To establish ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient *and* that such deficiency resulted in prejudice against the defendant. *State v. Gonzales*, 2007-NMSC-059, ¶ 14, 143 N.M. 25, 172 P.3d 162. Generalized prejudice is insufficient. *See Lytle v. Jordan*, 2001-NMSC-016, ¶ 25, 130 N.M. 198, 22 P.3d 666. Rather, a defendant must show that counsel's errors were so serious and such a failure of the adversarial process that they "undermine[] judicial confidence in the accuracy and reliability of the outcome." *State v. Quinones*, 2011-NMCA-018, ¶ 30, 149 N.M. 294, 248 P.3d 336 (internal quotation marks and citation omitted). According to Defendant, Counsel's error falls into two broad categories: (1) failure to challenge the admissibility of various statements implicating Defendant, and (2) failure to file a written Rule 11-413 motion

allowing cross-examination of the State's medical expert on D.L's earlier sexual abuse. We address each in turn.

**Failure to Object**

Defendant contends that Counsel was ineffective for failing to object to statements made at trial. We organize the statements into four groups: (1) statements describing the safe house interview and CYFD's sexual abuse assessment process, (2) hearsay statements relaying D.L.'s account of sexual abuse and kidnaping, (3) hearsay statements summarizing Mother's account of D.L.'s behavior and Defendant's drug abuse and prior bad acts, and (4) hearsay statements recounting M.B.'s allegation of sexual abuse. We evaluate each group of statements under the first prong of our test. Our review "must be highly deferential," *Lytle*, 2001-NMSC-016, ¶ 50, and we therefore employ a strong presumption that Counsel's conduct "falls within the wide range of reasonable professional assistance." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (internal quotations and citation omitted). "Failure to object to every instance of objectionable evidence or argument does not render counsel ineffective; rather, failure to object falls within the ambit of trial tactics." *State v. Allen*, 2000-NMSC-002, ¶ 115, 128 N.M. 482, 994 P.2d 728 (alteration omitted) (internal quotation marks and citation omitted). Any sound trial tactic withstands review. *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057.

**Safe house interview and CYFD's sexual abuse assessment process**

At trial, the State described the safe house interview without objection. In addition, Counsel allowed Dupassage to explain each step of CYFD's lengthy investigation process in detail, including the process of "substantiating" or "unsubstantiating" an allegation of child sexual abuse, which according to Defendant, allowed the CYFD to usurp the jury's fact-finding function. Failing to object to inadmissible evidence can be a trial tactic. *See State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App. 1992) ("[A]cquiescence to the introduction of inadmissible evidence may sometimes be tactically advantageous."). By allowing the jury to hear about the safe house interview and CYFD's internal process, Counsel was able to undermine witness credibility and expose important inconsistencies in CYFD's results. The record reveals that Counsel was able to show, through cross-examination of Dupassage, that (1) M.B. had initially claimed that Defendant had also molested her, but that CYFD could not substantiate that allegation; (2) D.L.'s safe house interview was delayed for more than two months, while M.B.'s was completed almost immediately; and (3) CYFD was unable to substantiate D.L.'s previous sexual abuse allegation during a similar process. Counsel's actions were based on a trial strategy. There is no ineffective assistance of counsel here.

**Hearsay statements of D.L.'s account of sexual abuse and kidnaping**

Defendant challenges counsel's failure to object to three hearsay statements: (1) Dr. Ornelas's summary of Mother's account of D.L.'s description of the abuse; (2) Detective Walker's testimony recounting another detective's statement that "[Defendant] was the one that [D.L.] said had sexually molested her"; and (3) Detective Walker's statement that "during [D.L.'s] safe house interview, she said that [Defendant] would shut the door with a very large rock."

Again, we cannot say that Counsel was ineffective in failing to object to these statements. At the evidentiary hearing, Counsel proffered plausible rational trial tactics for each omission. Counsel believed that the sexual abuse hearsay would inevitably "come into the trial" as part of D.L.'s testimony. Counsel wanted it to come in to support his theory of fabrication due to family discord. Certain statements allowed him to demonstrate bias and attack the credibility of the State's witnesses. For instance, Counsel explained that he declined to object to Mother and Grandmother's testimony recounting D.L.'s initial revelation of sexual abuse because, in his view, "the importance that it weighed for the defense, was that . . . [M]other and . . . [G]randmother questioned right then whether [D.L.] was telling the truth." Counsel further explained that he did not object to Detective Walker's hearsay because it served his purpose in that "[he] tried to paint Detective Walker as being

10

. . . kind of prejudiced . . . [as evidenced by] her just sort of taking at face value the prior detective's conclusion without any more study."

On review, "[w]e need not decide whether [counsel] was right. We must only decide whether a reasonably competent attorney might have reasoned and concluded as he did." *State v. Rojo*, 1999-NMSC-001, ¶ 64, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Counsel's reasoned decision to forego certain hearsay objections to bolster his own theory, to undermine the witness's or D.L.'s credibility, or because the evidence was otherwise admissible through another witness, falls squarely within sound trial tactics.

**Hearsay statements recounting Mother's account of D.L.'s behavior and Defendant's drug abuse and other prior bad acts**

We also find no deficiency in Counsel's decision not to object to Dr. Ornelas's retelling of Mother's out-of-court statements regarding Defendant's drug habits and Mother's suspicions that Defendant was sexually abusing D.L. The most inflammatory of the challenged statements described Defendant as a "methadone, crack and heroin" addict, who had been "doing drugs all along," and whom Mother was suspicious of "because she used to put her tongue in [D.L.]'s mouth when she was little." Counsel explained at the evidentiary hearing that these harsh statements aligned with his theory that Mother was out to blatantly incriminate Defendant in furtherance of a bitter family feud. To that end, Counsel revealed through cross-

11

examination of Dr. Ornelas that, despite Mother's purported concerns, she still left D.L. in Defendant's care. Additionally, Counsel was aware that much of what was relayed through hearsay would be admitted and cross-examined during Mother's testimony. Given the heavy presumption in favor of effectiveness of counsel, we will not hold these reasoned omissions as deficient. *See Lytle*, 2001-NMSC-016, ¶ 26 ("This inquiry must take into account all of the circumstances surrounding the defense . . . [,] must be highly deferential . . . [, and] requires that every effort be made to eliminate the distorting effects of hindsight . . . ." (internal quotation marks and citations omitted)).

**Hearsay statements recounting M.B.'s account of sexual abuse**

Finally, Defendant faults Counsel for failing to object to Detective Walker's statement that M.B. told her that Defendant "had sex with me." Counsel welcomed this hearsay as an integral part of his theory of the case: that D.L. and M.B. had initially fabricated the sexual abuse under pressure of the family feud, but M.B. had since recanted and was now, as a defense witness, telling the truth that no abuse had occurred. Counsel sought to convince the jury that there was reasonable doubt by contrasting the girls' initial allegations with their now conflicting testimony. We see no deficiency in Counsel furthering this theory by strategically foregoing objections. *See State v. Brazeal*, 109 N.M. 752, 757, 790 P.2d 1033, 1038 (Ct. App. 1990)

12

("[E]ffectiveness is not measured by mindlessly adding the number of motions, objections, and questions raised by defense counsel.").

In conclusion, having failed to demonstrate Counsel was deficient by making a reasoned choice not to object to the above statements, it is unnecessary to weigh the prejudicial effect of each statement. *Garcia*, 2011-NMSC-003, ¶ 34 (stating that because "trial counsels' performance was not deficient[,] we need not reach the prejudice prong of the inquiry"). Counsel was not ineffective with regard to the above referenced statements.

**Failure to Comply With Rule 11-413**

Dr. Ornelas was unavailable for trial, so the State played a video deposition of her testimony. In that video, Dr. Ornelas testified about her medical evaluation and treatment of D.L. following D.L.'s allegation that she had been sexually abused by Defendant. The State benefitted most from Dr. Ornelas's conclusion that the physical examination of D.L. was consistent with D.L.'s allegations of sexual abuse, recent behavioral problems, and advanced sexual knowledge.

On cross-examination, Counsel refuted the first two tenets of Dr. Ornelas's conclusion. Dr. Ornelas was compelled to admit that the infection she observed in D.L.'s vagina, as well as any redness, swelling, or discharge, was not necessarily the "result of sexual abuse." Dr. Ornelas further admitted that D.L.'s "sleep problems,

13

nightmares, urinating in various odd places, and fear and anger . . . can be associated . . . with anything that would stress a child[, even] . . . sexual abuse from long ago."

Because Counsel did not understand the requirements with respect to Rule 11-413(B), he was prevented from refuting Dr. Ornelas's conclusion that D.L.'s advanced sexual knowledge was consistent with the allegation Defendant sexually abused D.L. Counsel repeatedly attempted to question Dr. Ornelas about D.L.'s previous sexual abuse. Each time, however, the State's objections were sustained because Counsel had not filed a written motion in compliance with Rule 11-413(B), which requires that if evidence of the victim's past sexual conduct "is proposed to be offered, the defendant must file a written motion prior to trial."

Defendant argues that Counsel's failure to follow the requirements of Rule 11-413 constitutes ineffective assistance of counsel. As we acknowledged in our memorandum opinion during the first appeal, Counsel's failure to follow the procedural requirements of Rule 11-413 is a professional deficiency. *See Lovato*, 2009 WL 6763582, at *2. There was nothing presented at the evidentiary hearing that would negate this conclusion. Thus, the first prong of the test is met. We must now assess the prejudicial impact of this error. We will find prejudice if, as a result of a counsel's deficient performance, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *State v.*

14

*Dylan J.*, 2009-NMCA-027, ¶ 38, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted).

Although in *State v. Payton*, 2007-NMCA-110, ¶ 11, 142 N.M. 385, 165 P.3d 1161 we concluded that evidence countering the assumption of sexual naivete is essential to a proper defense, this conclusion does not require that such evidence must be admitted through expert testimony or through every possible witness. In *Payton*, the defendant was prevented from presenting *any* evidence of the victim's previous sexual abuse and "the prosecutor apparently effectively urged the jury to find that someone as young as [the victim] would not have knowledge of sexual matters unless [the d]efendant had victimized her." *Id.* ¶ 14. The present case is distinguishable. D.L.'s previous sexual abuse was referenced at least fifteen separate times throughout trial, first in opening and then in closing, by both the State and Counsel, on direct and cross-examination, and through five separate witnesses, including D.L. herself. The only State witness not cross-examined on the matter was Dr. Ornelas and that was because of Counsel's failure to follow Rule 11-413(B).

Defendant relies on *United States v. Cronic*, 466 U.S. 648, 659 (1984), and contends that "failure to be able to confront Dr. Ornelas on this critical topic deprived Defendant of the ability" to undermine Dr. Ornelas's credibility, which eroded Defendant's right to effective cross-examination, and thereby poisoned the sanctity

of the trial. We disagree. *Cronic* references the proposition recognized in *Davis v. Alaska*, 415 U.S. 308, 318 (1974), that "[n]o specific showing of prejudice [is] required . . . [when] the petitioner ha[s] been denied the right of effective cross-examination." *Cronic*, 466 U.S. at 659 (internal quotation marks omitted). That presumption of prejudice, however, will not be entertained unless defense counsel "*entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Bell v. Cone*, 535 U.S. 685, 696-97 (2002) ("When we spoke in *Cronic* of the possibility of presuming prejudice . . ., we indicated that the attorney's failure must be complete."). In *Davis*, the defense counsel was prevented by the trial court from cross-examining the prosecution's key eyewitness about his own probation at the time of his cooperation with police. 415 U.S. at 310-11. In effect, the *Davis* jury never heard *any* evidence of the defendant's theory that the prosecution's eyewitness—who was on probation at the time—was motivated by a concern to divert suspicion away from himself. *Id.* at 317. The United States Supreme Court held that "jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the eyewitness's] testimony which provided a crucial link in the proof of petitioner's act." *Id.* (alteration omitted) (internal quotation marks and citation omitted).

In contrast, the jury here was made aware of D.L.'s previous sexual abuse and

16

Counsel's theory that D.L.'s advanced sexual knowledge and behavior could be attributed to the previous abuse and not to contact with Defendant. After the deposition, Counsel filed a Rule 11-413 motion, which was granted, enabling him to cross-examine every live witness about D.L.'s previous sexual abuse by Mother's boyfriend. Additionally, Dr. Ornelas herself admitted that D.L.'s behavioral problems could be associated with "sexual abuse from long ago."

Despite the presentation of that theory to the jury, Defendant maintains that she was prejudiced because Dr. Ornelas was not individually questioned about whether "[D.L.] got her sexual knowledge, if she did, from either [Defendant] or Joseph, . . . [M]other's boyfriend." While the jury was not allowed to hear Dr. Ornelas's answer to this question, we disagree that the absence of Dr. Ornelas's view on the subject prejudiced Defendant such that "there is a reasonable probability that, absent the errors, the factfinder *would* have had a reasonable doubt respecting guilt." *Dylan J.*, 2009-NMCA-027, ¶ 38 (emphasis added) (internal quotation marks and citation omitted).

By the time Dr. Ornelas's video deposition was played, the jury already knew of D.L.'s prior sexual abuse as every preceding witness had acknowledged that abuse. Dr. Ornelas admitted that D.L.'s behavioral problems could be associated with "sexual abuse from long ago." Dr. Ornelas's testimony at the evidentiary hearing was that her

17

opinion would not have changed at all had she been told at the deposition that D.L. had been abused by Mother's boyfriend prior to the alleged sexual abuse by Defendant. Even the prosecutor recognized Counsel's theory and felt the need to rebut its impact during closing arguments. Finally, to the extent Defendant is claiming that the jury was deprived of a line of inquiry that would have revealed Dr. Ornelas's conclusion as predetermined and not worthy of belief, we believe Counsel sufficiently tested Dr. Ornelas's credibility through lengthy cross-examination, revealing that she was "a stock, standard, stick-to-your-outline sort of a [s]tate/plaintiff witness."

The final step in our prejudice analysis is to "compare the weight of this prejudice against the totality and strength of the evidence of [the d]efendant's guilt and determine if the outcome of the trial has been rendered unreliable." *State v. Roybal*, 2002-NMSC-027, ¶ 26, 132 N.M. 657, 54 P.3d 61. We determine that any slight prejudice that might have been caused by Counsel's failure to ask Dr. Ornelas about previous abuse is minor in comparison to the overwhelming evidence of guilt presented to the jury.

D.L. relayed a cogent and credible story, describing in painful detail specific instances of sexual abuse by Defendant. On cross-examination, D.L.'s story did not waiver. Her testimony was corroborated by her recent behavioral problems, as recounted by Mother and Grandmother, and her story did not divert from her original

18

allegation several years earlier. Defendant's only witness, M.B., offered an alternate version of events; however, M.B. changed her testimony while on the stand, could not remember important facts and dates, and recanted her initial allegation of sexual abuse. In the face of such evidence, we cannot conclude that the jury would have rendered a different decision had Dr. Ornelas acknowledged D.L.'s sexual knowledge could have come from prior abuse.

Dr. Ornelas's conclusions and credibility were sufficiently tested and the jury heard testimony sufficient to apprise it of each of Defendant's theories. Moreover, we will not presume that the jury assigned undue weight to Dr. Ornelas as a medical expert. *See State v. Alberico*, 116 N.M. 156, 164-65, 861 P.2d 192, 200 (1993) ("[I]t is not within the province of our appellate courts to assume that juries will accord undue weight to expert opinion testimony . . . . The jury is not required to accept expert opinions as conclusive and disregard all other evidence bearing on the issue.") Based on a full review of the trial transcripts, the video deposition, and the evidentiary hearing, we hold that Counsel's failure to cross-examine Dr. Ornelas on D.L.'s sexual history did not prejudice Defendant such that our confidence in the reliability of the jury's outcome is undermined.

**CONCLUSION**

We affirm the district court's ruling and deny Defendant's request for a new trial based on a violation of her Sixth Amendment right to effective assistance of counsel.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**RODERICK T. KENNEDY, Judge**